Bridget SELWYN

v.

Karen WARD et al.

No. 2002–637–Appeal.

Supreme Court of Rhode Island.

July 7, 2005.

Sean Feeney, Esq., Providence, for Plaintiff.

Robert A. Scott, Esq., Westerly, for Defendant RC Liquors.

Present: WILLIAMS, C.J.,
GOLDBERG, SUTTELL, and
ROBINSON, JJ.

## OPINION

PER CURIAM.

It's an all too familiar scenario—a group of high school students manage to procure some alcoholic beverages, act irresponsibly, and someone gets hurt. In this version, however, the injuries did not result from the consumption of illegally obtained alcohol but from a minor igniting it and causing an explosion. The plaintiff, Bridget Selwyn (Selwyn or plaintiff), is the victim in this tragedy, and she sought to recover for her injuries from several named defendants, including RC Liquors, Inc. (RC Liquors or defendant). It is from a grant of summary judgment in favor of that defendant that the plaintiff appeals.

This case came before the Supreme Court on May 12, 2005, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing arguments of counsel and reviewing the memoranda submitted by the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time.

### Facts and Travel

In the early morning of August 26, 2000, plaintiff and several others gathered at the home of Karen Ward (Ward), on Warwick Neck Avenue, in Warwick. The Ward property included an outbuilding, referred to as "the barn," in which Ward's son, Taylor, and his friends often socialized. On the night of the incident, the gathering at the barn consisted of: Bridget Selwyn, Taylor Ward, Michael A. Buonanno (Buonanno), John Cronin (Cronin), Eric Machala, Kathryn A. Marciano (Marciano), Peter Keene, Jason Petrarca, James Carvalho, and Richard Cole.[1]

The accounts of the evening's events indicate that various people were smoking marijuana and/or ingesting ecstasy in the barn.[2] There also was a partially consumed 1.75–liter bottle of 190–proof grain alcohol or "Everclear" in the barn. At about 4:30 a.m. on August 26, 2000, the bottle of Everclear became the catalyst for disaster when Buonanno poured some of the grain alcohol onto an open flame, causing an intense explosion that burned plaintiff, Marciano, and Cronin.

It was revealed during discovery that a bottle of Everclear had been purchased by another adolescent, Lauren Andrews (Andrews), for a gathering at the barn the previous month.[3] Andrews said that she purchased the Everclear at RC Liquors and was not asked for proof of age. Earlier, at that gathering, Andrews mixed up a batch of "Jungle Juice"—a combination of "Kool–Aid, Everclear, and vodka"—and left the remaining grain alcohol in the barn.

---

1. On the night of the incident, all those gathered in the barn were under the age of twenty-one: Selwyn (d.o.b.9/24/1981); Taylor (d.o.b.12/13/1984); Buonanno (d.o.b.2/16/1983); Cronin (d.o.b.6/16/1981); Eric Machala (d.o.b.3/15/1981); Marciano (d.o.b.4/15/1983); Peter Keene (d.o.b.5/6/1983); Jason Petrarca (d.o.b.9/7/1981); James Carvalho (d.o.b.5/3/1982); Richard Cole (d.o.b.5/29/1982).

2. Ecstasy is a street name for the psychoactive drug methylenedioxymethamphetamine; it is a stimulant and hallucinogen.

3. In July 2000, Andrews was seventeen years old (d.o.b.6/21/1983). Andrews was not present at the barn on August 26, 2000; she was traveling outside the United States.

The plaintiff amended her complaint to include RC Liquors as a party defendant. She alleged that defendant directly and proximately caused her injuries by providing Andrews with the grain alcohol when it "knew or should have known [ (1)] that [Andrews] was underage to lawfully possess and/or consume alcoholic beverages[.; and (2)] that it was unlawful and dangerous to others to provide grain alcohol to minors." RC Liquors moved for summary judgment.

In support of her opposition to defendant's motion, plaintiff submitted the affidavit of Thomas J. Paolino, Jr., M.D. (Dr. Paolino). Doctor Paolino is a physician and psychiatrist who devotes a substantial portion of his practice to treating substance abuse issues in adolescents and young adults. In the affidavit, he said that "[t]he possession and use of grain alcohol by adolescents and young adults is extremely dangerous." He explained that consuming grain alcohol can lead to "rapid intoxication" and that "adolescents and young adults will typically engage in risky and dangerous behavior when severely impaired." He further averred that grain alcohol is extremely flammable and that "[f]requently adolescents and young adults who use grain alcohol light it on fire." Doctor Paolino expressed his opinion that: "It is very foreseeable that adolescents and young adults in the possession of * * * grain alcohol will frequently light it on fire." The plaintiff also supplied a picture of the Everclear bottle, which includes a warning about the product's flammability.

The plaintiff argued that defendant breached its duty of care when it sold the grain alcohol to Andrews with actual or constructive knowledge of the "fire play" allegedly linked to Everclear.[4] She conceded that there was "no allegation that this incident occurred due to the intoxication of a minor [or] that [RC Liquors] sold grain alcohol that occasioned, in whole or in part, the intoxication of a minor." She instead asserted that the cause of the incident was "horseplay." The plaintiff argued that "[a] number of drink recipes and web sites encourage this fire play" and that purveyors of grain alcohol should be aware that those drinks are lit on fire. The plaintiff also argued that defendant's violation of the state law prohibiting sales of liquor to minors[5] was evidence of its negligence and that the statute is intended "to protect minors from injury by alcohol." Further, plaintiff asserts that the state Dram Shop Act[6] "broadens liability."

The trial justice granted defendant's motion. After rejecting the testimony of Dr. Paolino on the ground that he was not qualified to give the proffered opinion, the trial justice ruled that plaintiff's claim failed on the element of foreseeability. The trial justice reasoned:

"[T]here is no nexus, by statute or by common law, that would find that the conduct, if any, of the defendant in sell-

---

4. The plaintiff used the term "fire play" to refer to games that involve lighting things on fire. According to Dr. Paolino's affidavit: "A number of drink recipes and publications encourage lighting grain alcohol on fire."

5. General Laws 1956 § 3–8–5 provides, in pertinent part:

"**Penalty for violations relating to underage persons.**—Any person who sells or suffers to be sold or delivered any beverage to a person who has not reached his or her

twenty-first (21st) birthday either for his or her own use or the use of his or her parents or any other person * * * shall for the first offense be subject to a fine of two hundred fifty dollars ($250); for the second offense, be subject to a fine of five hundred dollars ($500), and for the third and any subsequent offense, be subject to a fine of seven hundred fifty dollars ($750)."

6. Rhode Island Liquor Liability Act, G.L.1956 chapter 14 of title 3.

ing grain alcohol * * * to the minor, who then allegedly gave it to her friend and went to Italy, would be liable under the circumstances of this case where there is no allegation that the injury occurred because any minor—or adult, for that matter—imbibing the alcohol, which caused, in whole or in part, that individual's intoxication. It would seem that there's no statutory authority for this cause of action [and] that the misconduct, if any, of the defendant was rendered remote by intervening independent acts of others."

Judgment entered pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure, and plaintiff filed a timely notice of appeal.

### Issues on Appeal

The plaintiff argues that the trial justice erred by granting summary judgment in favor of RC Liquors because the documents produced illustrate that defendant negligently caused Selwyn's injuries by selling the Everclear to Andrews. In addition, plaintiff contends that defendant's alleged violation of state liquor laws establishes a cause of action in negligence against defendant under the Dram Shop Act. Lastly, plaintiff asserts that defendant can be held strictly liable because selling grain alcohol to a minor is an ultrahazardous activity.

### Standard of Review

■ This Court reviews the grant of a motion for summary judgment *de novo*, according to the same standards applicable to the trial justice. *Town of Cumberland v. Rhode Island Interlocal Risk Management Trust, Inc.*, 860 A.2d 1210, 1214 (R.I. 2004). We consider the evidence presented, without evaluating its weight or credibility, and will affirm the granting of summary judgment "if, after reviewing the admissible evidence in the light most fa-

vorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Rotelli v. Catanzaro*, 686 A.2d 91, 93 (R.I.1996)); *see also Weaver v. American Power Conversion Corp.*, 863 A.2d 193, 200 (R.I.2004).

### Did Defendant Owe a Duty of Reasonable Care to Plaintiff?

■ To prevail on a claim of negligence, "a plaintiff must establish a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage." *Mills v. State Sales, Inc.*, 824 A.2d 461, 467–68 (R.I.2003) (quoting *Jenard v. Halpin*, 567 A.2d 368, 370 (R.I.1989)). The crux of this appeal is whether defendant owed plaintiff a legal duty, which is a question of law. *Martin v. Marciano*, 871 A.2d 911, 915 (R.I.2005) (citing *Volpe v. Gallagher*, 821 A.2d 699, 705 (R.I.2003)). If no such duty exists, then plaintiff's claim must fail, as a matter of law. If the evidence establishes that a duty did run from defendant to plaintiff, then plaintiff is entitled to a determination of the remaining factual questions—did defendant breach the duty of care, and if so, was that breach the proximate cause of plaintiff's harm? *See Terry v. Central Auto Radiators, Inc.*, 732 A.2d 713, 718 (R.I.1999) ("Whether [defendant's] inaction amounted to a breach of the duty owed to [plaintiff] was a question of fact[,] which should have been put to the trial jury."); *Splendorio v. Bilray Demolition Co.*, 682 A.2d 461, 467 (R.I.1996) ("Ordinarily the determination of proximate cause * * * is a question of fact that should not be decided by summary judgment.").

This Court determines whether a duty exists on a "case-by-case basis," considering "'all relevant factors, including the relationship between the parties, the scope and burden of the obligation to be imposed upon the defendant, public policy considerations,' * * * and the 'foreseeability of harm to the plaintiff.'" *Martin*, 871 A.2d at 915 (quoting *Volpe*, 821 A.2d at 705, and *Banks v. Bowen's Landing Corp.*, 522 A.2d 1222, 1225 (R.I.1987)). The linchpin in the analysis of whether a duty flows from a defendant to a plaintiff is foreseeability. *Splendorio*, 682 A.2d at 466; *see Volpe*, 821 A.2d at 705. As Justice Cardozo of the New York Court of Appeals said: "The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." *Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99, 100 (1928); *see also Hennessey v. Pyne*, 694 A.2d 691, 697 (R.I. 1997). This Court has expressed this concept of limiting the scope of a defendant's duty according to risks he or she reasonably perceived, saying that a duty must be based on conduct "sufficiently likely to result in the kind of harm" suffered by the plaintiff, *Volpe*, 821 A.2d at 705, or that "in order to temper foreseeability * * * an adequate nexus must exist between the foreseeability of [plaintiff's] harm and the actions of the defendant." *Marchetti v. Parsons*, 638 A.2d 1047, 1051 (R.I.1994).

The plaintiff argues that the risk of the type of harm she suffered was within defendant's range of apprehension because it knew or should have known that grain alcohol is commonly used by minors to engage in fire play. The only evidence plaintiff presented to support this contention was the opinion of Dr. Paolino. However, the trial justice rejected his opinion, saying: "[He] may well be qualified as an expert in psychiatry, in pharmacology, perhaps in treating those who suffer from substance abuse," but he is not qualified to give an opinion on whether it is foreseeable that adolescents would light grain alcohol on fire.

The admissibility of a proffered expert opinion is a matter left to the sound discretion of the trial justice; absent an abuse of that discretion, this Court will not disturb the trial justice's ruling. *Beaton v. Malouin*, 845 A.2d 298, 301 (R.I.2004); *Geloso v. Kenny*, 812 A.2d 814, 817 (R.I. 2002). Having carefully reviewed the record, we are satisfied that the trial justice did not abuse her discretion by disregarding Dr. Paolino's opinion. From Dr. Paolino's education and experience, one could reasonably conclude that he was not qualified to give an opinion on a liquor store owner's actual or constructive knowledge about an adolescent's tendency to ignite grain alcohol for sport. *See Geloso*, 812 A.2d at 817 ("A review for abuse of discretion requires us to examine the ruling to ensure that the trial justice's discretion 'has been soundly and judicially exercised, * * * with just regard to what is right and equitable under the circumstances and the law.'") (quoting *Debar v. Women & Infants Hospital*, 762 A.2d 1182, 1185–86 (R.I.2000)).

Further, we are not convinced that this type of harm is a foreseeable consequence of the sale of alcohol to minors. The plaintiff asserts that defendant owed her a duty arising out of G.L.1956 § 3–8–5. She contends that her injuries were foreseeable by RC Liquors by virtue of the sheer quantity and volatile nature of the grain alcohol it allegedly sold to seventeen-year-old Andrews, in violation of § 3–8–5. According to plaintiff, the size of the bottle of Everclear and the label warning of the product's flammability put defendant on notice that Andrews intended to share the grain alcohol with other minors

and that one of those minors might get burned.

In *Martin*, 871 A.2d at 913, we held that a defendant-homeowner was not entitled to summary judgment in a suit to recover damages suffered by a minor who consumed alcohol on her property. The plaintiff was a guest at a party the defendant hosted for her daughter, with two kegs of beer and a port-a-john available; he admitted to drinking approximately six beers from the kegs. *Id.* at 914. There was an altercation, and the plaintiff was struck in the head by a baseball bat wielded by a third person, causing the injuries for which he sued the defendant and others. *Id.* The Superior Court granted the defendant's motion for summary judgment, finding that she had no duty to protect the plaintiff from the attack because it was unforeseeable. *Id.* This Court vacated the judgment, holding that a social host owes a special duty to his or her underage guests when he or she provides those guests with intoxicants. *Id.* at 915–16. We reasoned that holding social hosts to such a duty furthered the public policy reflected in our state laws banning underage drinking and prohibiting adults from supplying alcohol to minors. *Id.* at 916. Furthermore, we concluded that it was foreseeable that when upwards of fifty young people are at a party where alcohol is available, a violent altercation is foreseeable, because "the use of intoxicants frequently unduly excites the tempers, emotions and actions of those who indulge in them." *Id.* at 917 (quoting *Fisher v. Robbins*, 78 Wyo. 50, 319 P.2d 116, 126 (1957)).

The present case is distinguishable from *Martin* in two crucial ways. First, the minors in *Martin* were guests at the defendant's home and under her supervision while illegally consuming alcohol, whereas Buonanno, Selwyn, and the others gathered at the barn were neither on RC Liquors' property nor under its supervision when the fire injuring plaintiff occurred. Second, the evidence in *Martin* suggested that the defendant made alcohol available for consumption by the guests gathered at her house, giving rise to a special duty to protect those guests, but there has been no suggestion that RC Liquors sold grain alcohol to Andrews for the purpose of igniting it.

The public policy considerations that shaped the duty of care in *Martin* are not present in this case. At issue here is whether a purveyor of alcohol owes a duty to protect minors, to whom he or she allegedly supplied alcoholic beverages, from another person's deliberate act of pouring the alcohol over an open flame. The statutes regulating alcohol and minors reflect a public policy against underage drinking and not incendiary behavior. *Martin*, 871 A.2d at 916; *see also* G.L.1956 § 3–14–6(a) ("A defendant * * * who negligently serves liquor to a minor is liable for damages proximately caused by the minor's *consumption* of the liquor."). (Emphasis added.)

Moreover, as in *Martin*, 871 A.2d at 915, 917, public policy is not the sole factor; foreseeability limits the scope of duty. Even if we assume, as we are required to do for purposes of our review, that RC Liquors sold the grain alcohol to Andrews, a minor, we are satisfied that defendant could not reasonably perceive the risk that several weeks later, while the minor was out of the country, some other youth would pour the substance onto an open flame, causing flames to engulf Selwyn. Selwyn was not injured as a result of consumption of the grain alcohol nor was she vulnerable to a dangerous condition created by defendant.[7] No special duty arises from RC

---

7. This case is also distinguishable from *Volpe v. Gallagher*, 821 A.2d 699 (R.I.2003). In

Liquors' alleged illegal sale of the Everclear to protect those placed in harm's way by the deliberate ignition of the alcohol by a third person.

## Does Plaintiff Have a Cause of Action Under a Strict Liability Theory?

■■■ The plaintiff asserts that selling grain alcohol to a minor is an ultrahazardous activity, warranting application of strict liability. Whether a defendant has engaged in an ultrahazardous or abnormally dangerous activity is a question of law. *Splendorio*, 682 A.2d at 465. Strict liability attaches when a plaintiff's injuries are proximately caused by some ultrahazardous or abnormally dangerous activity of the defendant but not when they are caused by an ultrahazardous or abnormally dangerous material. *Id.* at 465–66. To determine whether an activity is ultrahazardous or abnormally dangerous, courts in this jurisdiction consider the following factors:

"(a) existence of high degree of risk of some harm to the person, land or chattels of others;

"(b) likelihood that the harm that results from it will be great;

"(c) inability to eliminate the risk by the exercise of reasonable care;

"(d) extent to which the activity is not a matter of common usage;

"(e) inappropriateness of the activity to the place where it is carried on; and

"(f) extent to which its value to the community is outweighed by its dangerous attributes." *Id.* at 466 (quoting 3 Restatement (Second) *Torts* § 520 (1977)).

■■■ To give our analysis some perspective, the drafters explained that: "The harm threatened must be major in degree, and sufficiently serious in its possible consequences to justify holding the defendant strictly responsible for subjecting others to an unusual risk." 3 Restatement (Second) *Torts* § 520, cmt. *g* at 38. They provided the following examples of the type of harm:

"Some activities, such as the use of atomic energy, necessarily and inevitably involve major risks of harm to others, no matter how or where they are carried on. Others, such as the storage of explosives, necessarily involve major risks unless they are conducted in a remote place or to a very limited extent. Still others, such as the operation of a ten-ton traction engine on the public highway, which crushes conduits beneath it, involve such a risk only because of the place where they are carried on." *Id.*

With these benchmarks in mind, while we do not mean to trivialize the risks associated with providing minors with alcoholic beverages, flammable or otherwise, such activity does not rise to the level addressed by § 520 of the restatement.

*Volpe,* the defendant's mentally-ill adult son resided with her in a small ranch house and kept a shotgun, pistol, ammunition, and sundry gun paraphernalia in the basement. *Id.* at 702–03. One day, defendant's son surfaced from the basement and, unprovoked, shot a neighbor three times in the head and body. *Id.* at 703. A jury held defendant liable for the wrongful death of the neighbor, but the trial justice granted the defendant's motion for a new trial. *Id.* at 704. On appeal, we concluded that the jury could properly infer that defendant was present when her son engaged in the unreasonably dangerous behavior giving rise to the neighbor's untimely death and had the ability to control her son's use of her house. *Id.* at 706–07. We held that, under premises liability principles, the defendant owed a duty to protect third persons "within the zone of danger" from the unreasonable risk posed by her son's arsenal. *Id.* at 709–10. The present case is not a premises liability case; Selwyn does not assert that her injuries resulted from an unreasonably dangerous condition on or within close proximity to RC Liquors' property.

Moreover, as the drafters commented, abnormally dangerous activities are those that cannot be made safe by the use of due care. 3 Restatement (Second) *Torts* § 520, cmt. *h* ("Most ordinary activities can be made entirely safe by the taking of all reasonable precautions; and when safety cannot be attained by the exercise of due care there is reason to regard the danger as an abnormal one."). We are satisfied that, although selling grain alcohol or alcoholic beverages to a minor is a crime and may pose serious risks to the purchaser and others, it is not an ultrahazardous or abnormally dangerous activity as those terms are recognized.

## Conclusion

For the reasons set forth herein, the judgment is affirmed, and the papers in the case are remanded to the Superior Court.

Justice FLAHERTY did not participate.