Monica OUCH, as Beneficiary of
Heang Say, deceased et al.

v.

Khan KHEA, Alias.

No. 2007–333–Appeal.

Supreme Court of Rhode Island.

Jan. 30, 2009.

Christopher E. Fay, Esq., Cranston, for Plaintiff.

Kevin M. Cain, Esq., for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

Once again the Supreme Court is confronted with a case that is awash in the blood of gang violence and a drive-by shooting.[1] Although we are saddened by the consequences of this tragedy, it is our view that redress for the victims in this case is through the criminal justice system and not a civil suit for tort damages based on the alleged negligence of the operator of a motor vehicle.

This case came before the Court on December 2, 2008, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the parties' memoranda, we are satisfied that cause has not been shown, and we shall decide this appeal without further briefing and argument.

### Facts and Travel

On New Year's Eve, 2001, a cowardly and sneaky shooting culminated in the death of Heang Say (Say) and the permanent disability of Thanaroeuth Ngim (Ngim). The defendant, Khan Khea (Khea or defendant), a member of the Asian Boys gang, attended a New Year's Eve party on Wendell Street in Providence; he was accompanied by his associates Say, Ngim, Peary Bun (Bun), and Angel Alvarez (Alvarez). Shortly after arriving, however, defendant decided to leave the gathering to meet his girlfriend so that they could welcome the new year together. As he exchanged farewells with other party-goers, defendant heard people outside the house and looked out the window to investigate. He later testified that he saw people across the street, and, based on their attire, he assumed that they were members of a rival gang. As a precaution, defendant asked two people who were familiar with the area to go outside to determine whether it was safe for the Asian Boys to depart.

Shortly afterward, defendant and his companions left the party and walked to his car, which was parked on Wendell Street. Seconds after the vehicle began to move, defendant heard one of the passengers shout: "He's got a gun." Ngim testified that he was looking out the back of

---

1. *See, e.g., State v. Monteiro*, 924 A.2d 784 (R.I.2007); *State v. Gomez*, 848 A.2d 221 (R.I. 2004); *State v. Bustamante*, 756 A.2d 758 (R.I.2000); *State v. Gasparico*, 694 A.2d 1204 (R.I.1997) (gang violence); *see also State v. Hazard*, 797 A.2d 448 (R.I.2002); *State v. Nunes*, 788 A.2d 460 (R.I.2002); *State v. Hazard*, 745 A.2d 748 (R.I.2000); *Liberty Mutual Insurance Co. v. Tavarez*, 754 A.2d 778 (R.I. 2000); *State v. Doctor*, 690 A.2d 321 (R.I. 1997) (drive-by shootings).

the vehicle and saw someone with a rifle run out of the driveway across the street and begin firing at defendant's vehicle.[2]

A hail of gunfire followed, and Say was struck in the head—he died several hours later—and another bullet hit Ngim, severing his spinal cord and rendering him a paraplegic. The defendant ducked his head and attempted to speed away; however, he lost control of the vehicle and crashed into a tree. The defendant abandoned the automobile and, along with Bun and Alvarez, fled the scene on foot.

On March 19, 2002, Say's beneficiary, Monica Ouch (Ouch), joined by Ngim, Bun, and Alvarez, filed a complaint in Superior Court seeking compensatory damages; they alleged that defendant's negligent operation of his automobile was the proximate cause of their injuries.[3] The defendant moved for partial summary judgment against Ouch, arguing that he did not owe Say a legal duty of care to protect him from criminal assault by rival gangs. The hearing justice granted summary judgment based on his conclusion that, in the context of this case, there was no duty to protect Say from injuries caused by third-party assailants. Additionally, the hearing justice concluded that there was no evidence that would establish a special relationship between the parties that would give rise to a duty of care; nor was there any evidence that the homicide was foreseeable.

The defendant subsequently filed a second motion for partial summary judgment, this time with respect to the personal-injury claims Ngim made. That motion was heard by a second hearing justice, who concluded that, because the decision of the first justice was not clearly erroneous and because the record had not expanded in the interim, the law of the case doctrine required that she adopt her predecessor's decision. Thus, the hearing justice granted defendant's second motion for partial summary judgment.

On June 19, 2007, final judgment was entered against Ouch and Ngim (collectively plaintiffs), and this appeal ensued. We affirm.

### Standard of Review

"This Court reviews *de novo* a decision of the Superior Court to grant summary judgment, 'applying the same rules and standards as those employed by the justice' below." *Benaski v. Weinberg,* 899 A.2d 499, 502 (R.I.2006) (quoting *Roe v. Gelineau,* 794 A.2d 476, 481 (R.I.2002)). We examine the evidence in a light most favorable to the nonmoving party, and we will affirm the judgment if we conclude that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* The party opposing a motion for summary judgment has an affirmative duty to introduce evidence that establishes the existence of a genuine issue of material fact, *Bourg v. Bristol Boat Co.,* 705 A.2d 969, 971 (R.I.1998); he or she "cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *Benaski,* 899 A.2d at 502 (quoting *Tanner v. Town Council of East Greenwich,* 880 A.2d 784, 791 (R.I.2005)).

### Duty

The plaintiffs in this case assert that defendant is liable in tort because he

---

**2.** Although he did not know the shooter's identity, Ngim testified that the assailant was not among the people he previously observed near the home on Wendell Street.

**3.** Bun and Alvarez originally were included as plaintiffs in this case. However, they were dismissed because they did not appear for depositions and their attorney was unable to contact them. Accordingly, neither is part of this appeal.

was negligent with respect to the operation of his motor vehicle and that defendant's negligence was the proximate cause of their injuries. "To prevail on a claim of negligence, 'a plaintiff must establish a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage.'" *Selwyn v. Ward,* 879 A.2d 882, 886 (R.I.2005) (quoting *Mills v. State Sales, Inc.,* 824 A.2d 461, 467–68 (R.I.2003)). At the forefront of our analysis in this case is whether defendant owed plaintiffs a duty of care, the existence of which is a question of law to be determined by the court. *Martin v. Marciano,* 871 A.2d 911, 915 (R.I.2005). This Court has acknowledged that there is no clear-cut formula to determine whether a duty exists in a specific case. *Kenney Manufacturing Co. v. Starkweather & Shepley, Inc.,* 643 A.2d 203, 206 (R.I.1994). Instead, the court will employ an *ad hoc* approach that "turns on the particular facts and circumstances of a given case," *Benaski,* 899 A.2d at 502, taking into consideration "'all relevant factors, including the relationship between the parties, the scope and burden of the obligation to be imposed upon the defendant, public policy considerations,' * * * and the 'foreseeability of harm to the plaintiff.'" *Selwyn,* 879 A.2d at 887 (quoting *Martin,* 871 A.2d at 915).

■ In the absence of a legal duty, plaintiffs' claim must fail as a matter of law. *See Selwyn,* 879 A.2d at 886. Only when a party properly overcomes the duty hurdle in a negligence action is he or she entitled to a factual determination on each of the remaining elements: breach, causation, and damages. *Id.*

■ The plaintiffs argue that defendant, as the operator of the vehicle, had a duty of care—a duty that defendant breached, they contend, by driving toward and past a known danger (*viz.,* "rival gang members"). However, although defendant unquestionably owed plaintiffs a duty to operate his automobile in a safe manner, we are unconvinced that this duty included protecting his passengers from the intentional criminal acts of street gangs.

This Court previously has addressed a defendant's duty to exercise reasonable care in protecting the plaintiff from third-party criminal conduct. We held that "a landlord does not have a duty, in the absence of special circumstances * * *, to protect his or her tenants from criminal conduct by a third party." *Thanadabouth v. Kongmany,* 712 A.2d 879, 880 (R.I.1998) (mem.). In that case, we declined to impose a duty of care on the defendant landlords to provide outdoor lighting to protect the plaintiff tenants from third-party criminal acts, even though the dwelling was located in a high-crime area. *Id.* at 879–80.

In contrast, the underlying circumstances in *Volpe v. Gallagher,* 821 A.2d 699 (R.I.2003), a landowner-liability case, were sufficient to give rise to a legal duty. The defendant in that case permitted her adult son, who was mentally ill, to live with her and to maintain an arsenal of weapons in her basement. *Id.* at 702–03. After the defendant's son shot and killed her neighbor (who was trimming his shrubbery) with one of the weapons that she allowed him to keep on her premises, *id.* at 703, this Court declared that the defendant owed a duty to exercise reasonable care in controlling her son as to prevent the type of harm inflicted on the victim. *Id.* at 709. We concluded that, "under these circumstances, defendant knew or had reason to know that she had the ability to control her son's conduct on her property merely by * * * telling him to remove the guns and ammunition from her house, and, if he

failed to do so, by removing them herself." *Id.*

Likewise, in *Martin*, we noted that although "[a]s a general rule, a landowner has no duty to protect another from harm caused by the dangerous or illegal acts of a third party," *Martin*, 871 A.2d at 915 (citing *Luoni v. Berube*, 431 Mass. 729, 729 N.E.2d 1108, 1111 (2000)), a special relationship between the alleged tortfeasor and a guest whose injury was foreseeable created an exception. In that case, the defendant hosted a graduation party for her daughter, and the plaintiff guest was attacked by a third party armed with a baseball bat. *Id.* at 914. We held that, because the defendant provided alcohol to the underage party-goers, including the plaintiff, there was a special relationship between the parties and the defendant owed the plaintiff a duty to exercise reasonable care under the circumstances to protect the plaintiff from violence at the hands of the attendees—whether invited guests or party crashers. *Id.* at 915–16. Furthermore, we declared that the legal duty in that case was in line with this state's strong public policy against underage drinking, as illustrated by the General Assembly's prohibition against alcohol consumption by persons under twenty-one years of age. *Id.* at 916.

In the case before us, we fail to see how the duty-triggering factors discussed above justify imposing a duty on the part of defendant to protect his passengers from intentional shootings by rival gang members. In fact, the evidence produced in this case establishes that the shooter was not among the people across the street who drew defendant's attention in the first place.

We further highlight the absence of a special relationship that would give rise to a legal duty. Whatever the fraternal structure, if any, under which a street gang operates, we are not prepared to elevate it into a special relationship sufficient to give rise to a duty of care.

Furthermore, plaintiffs may not bootstrap the general duty of care owed by a driver to his or her passengers into the legal duty that they ask this Court to declare. As we have articulated, the gun violence and resulting carnage in this case was unforeseeable and wholly unrelated to the operation of defendant's automobile. The injury suffered in this case was in no way connected to the vehicle or the driver's conduct. This Court previously has declared that "a duty must be based on conduct 'sufficiently likely to result in the kind of harm' suffered by the plaintiff, * * * or that 'in order to temper foreseeability * * * an adequate nexus must exist between the foreseeability of [plaintiff's] harm and the actions of the defendant.' " *Selwyn*, 879 A.2d at 887 (quoting *Volpe*, 821 A.2d at 705, and *Marchetti v. Parsons*, 638 A.2d 1047, 1051 (R.I.1994)). The facts of this case fail to meet this standard. It is difficult to ascertain a foreseeable connection between defendant's driving and plaintiffs' gunshot wounds. *See Liberty Mutual Insurance Co. v. Tavarez*, 754 A.2d 778, 780 (R.I.2000) (decedent's fatal gunshot wound was a foreseeable consequence of his assailants' operation of a motor vehicle "as a means of transportation to chase [the decedent], and as a shooting platform to bring about his murder"). However, this is not a case in which the driver drove into an area where he or she knew a gun battle was taking place. On the facts before us, defendant had no control over the murderous conduct of the gunman; nor are we convinced that he could have predicted the events of that evening.

Therefore, we are satisfied that the first hearing justice did not err in his finding that there was no duty of care in this case. Based on this holding, we need not address Ngim's argument that the hearing justice

who dismissed his claim through summary judgment erred in basing her decision on the law of the case doctrine. *See Ahlburn v. Clark,* 728 A.2d 449, 452 (R.I.1999) (noting that this Court may "affirm a judgment on grounds not actually relied upon by the trial court to justify its ruling").

## Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior Court, to which the papers in this case may be remanded.