May 26, 2021

**Supreme Court**

No. 2019-191-Appeal.
(PC 13-6459)

Jean Laprocina, as Administratrix of    :
  the Estate of George N. Laprocina

               v.                        :

    Nicole C. Lourie et al.              :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email:    opinionanalyst@courts.ri.gov,    of    any typographical  or  other  formal  errors  in  order  that corrections may be made before the opinion is published.

Jean Laprocina, as Administratrix of   :
  the Estate of George N. Laprocina

                  v.               :

     Nicole C. Lourie et al.       :

Present:  Suttell, C.J., Goldberg, Robinson, and Lynch Prata, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.**  This case came before the Supreme Court on April 6, 2021, on appeal by the plaintiff, Jean Laprocina, as Administratrix of the Estate of George N. Laprocina,[1] from a Superior Court judgment in favor of the defendant, The Narragansett Electric Company (Narragansett), following the grant of Narragansett's motion for summary

---

[1] George Laprocina died on October 12, 2016, and his estate was substituted as the plaintiff on March 31, 2017.  For the sake of clarity, we will refer to George Laprocina by his first name.  No disrespect is intended.

judgment.[2]  On appeal, the plaintiff asserts that (1) the trial justice abused her discretion by granting Narragansett's motion for summary judgment after, according to the plaintiff, another justice of the Superior Court had denied essentially the same motion; (2) Narragansett had a duty to maintain and repair streetlights; and (3) questions of fact remained as to whether Narragansett was negligent and whether it had actual or constructive knowledge of the malfunctioning streetlight.  For the reasons that follow, we affirm the judgment of the Superior Court.

## Facts and Travel

The facts before us are tragic.  On December 30, 2010, George Laprocina was walking across Allens Avenue at the intersection of Toronto Avenue in Providence, Rhode Island, when he was struck by a motor vehicle operated by defendant Nicole Lourie and owned by defendant Christine Lourie.  The front passenger side of the vehicle impacted George, causing his head to strike the

---

[2] While there were other defendants named in the amended complaint in this case—namely, Nicole C. Lourie; Christine M. Lourie; the City of Providence (the city) by and through its Treasurer James J. Lombardi, III, in his official capacity; the State of Rhode Island (the state); Verizon; John Doe A, B, and C; and Doe Corporation No. 1 and No. 2—only The Narragansett Electric Company is involved in the appeal before this Court.

We pause to note that the collision giving rise to this claim occurred over ten years ago, and the injured plaintiff has since passed away; however, the case has been pending in the Superior Court against the Louries, the city, the state, and the John Doe defendants since 2013.  We are directing that the case be resolved in a timely manner once the papers are returned to the Superior Court.

passenger side windshield. George suffered multiple bodily fractures, severe head trauma, and permanent brain damage.

In 2013, plaintiff commenced a negligence action in the Superior Court, and later filed an amended complaint alleging, *inter alia*, that the area where the collision occurred was not properly illuminated at the time of the incident because Narragansett allowed a "rolling blackout" to occur or failed to repair, replace, and maintain the streetlights in the area, which created a dangerous condition to pedestrians.

On October 22, 2014, Narragansett filed its initial motion for summary judgment, arguing that it owed no duty of care to George because its duty to maintain the streetlights in the area of the incident is governed by a tariff approved by the Rhode Island Public Utilities Commission (the PUC streetlight tariff), which, Narragansett maintained, limits any duty owed by Narragansett regarding its rendered services solely to its customer—the City of Providence (the city). *See* R.I.P.U.C. No. 2031-A. The PUC streetlight tariff contains a disclaimer of liability, which states that Narragansett's "duties and obligations under this tariff extend only to the [city], and not to any third parties. [Narragansett] * * * specifically disclaims any liability to third parties arising out of [Narragansett]'s obligations to [the city] under this section." *Id.* at Sheet 6.

A hearing on the motion for summary judgment was held on February 9, 2016. The trial justice denied Narragansett's motion, finding that the liability disclaimer contained in the PUC streetlight tariff was overly broad in absolving Narragansett of liabilities in all situations—to wit, even in cases of willful or wanton misconduct—and was therefore contrary to public policy and not enforceable.

More than two years later, Narragansett filed a second motion for summary judgment based on new grounds and a purportedly expanded record. Narragansett argued that, under principles of common law negligence and contract law, it had no duty to George to maintain the streetlight in question. A hearing on Narragansett's second motion for summary judgment was held before a different trial justice. The second trial justice determined that the issue before her turned on a common law duty analysis and, after analyzing the factors outlined in the seminal case of *Banks v. Bowen's Landing Corp.*, 522 A.2d 1222 (R.I. 1987),[3] she concluded that

---

[3] The *Banks* factors include:

> "(1) the foreseeability of harm to the plaintiff, (2) the degree of certainty that the plaintiff suffered an injury, (3) the closeness of connection between the defendant's conduct and the injury suffered, (4) the policy of preventing future harm, and (5) the extent of the burden to the defendant and the consequences to the community for imposing a duty to exercise care with resulting liability for breach." *Banks v. Bowen's Landing Corp.*, 522 A.2d 1222, 1225 (R.I. 1987).

Narragansett did not owe a duty of care to George. The second trial justice entered an order granting Narragansett's motion for summary judgment on February 20, 2019, and defendant sought and received a judgment in accordance with Rule 54(b) of the Superior Court Rules of Civil Procedure; final judgment entered in favor of Narragansett on March 18, 2019. The plaintiff timely appealed from that judgment.

## Standard of Review

This Court reviews a trial justice's grant of summary judgment *de novo.* *Ballard v. SVF Foundation*, 181 A.3d 27, 34 (R.I. 2018). "Although summary judgment is recognized as an extreme remedy, to avoid summary judgment the burden is on the nonmoving party to produce competent evidence that proves the existence of a disputed issue of material fact." *Id.* (brackets and deletion omitted) (quoting *Sullo v. Greenberg*, 68 A.3d 404, 407 (R.I. 2013)). We, like the trial justice, "view the evidence in the light most favorable to the nonmoving party, and if we conclude that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law, we will affirm the judgment." *Id.* (brackets omitted) (quoting *Sullo*, 68 A.3d at 406-07).

## Law of the Case Doctrine

We first address plaintiff's argument that, under the law of the case doctrine, the second trial justice abused her discretion in granting summary judgment after the first summary-judgment motion had been denied. We reject this contention.

"The law of the case doctrine provides that, 'after a judge has decided an interlocutory matter in a pending suit, a second judge, confronted at a later stage of the suit with the same question in the identical manner, should refrain from disturbing the first ruling.'" *Lynch v. Spirit Rent-A-Car, Inc.*, 965 A.2d 417, 424 (R.I. 2009) (quoting *Chavers v. Fleet Bank (RI), N.A.*, 844 A.2d 666, 677 (R.I. 2004)). However, the law of the case doctrine "is a flexible rule" and "may be disregarded when a subsequent ruling can be based on an expanded record." *Id.* (quoting *Chavers*, 844 A.2d at 677). "When presented with an expanded record, it is within the trial justice's sound discretion whether to consider the issue." *Felkner v. Rhode Island College*, 203 A.3d 433, 445 (R.I. 2019) (quoting *Ferguson v. Marshall Contractors, Inc.*, 745 A.2d 147, 152 (R.I. 2000)).

In 2014, Narragansett moved for summary judgment on the basis that it was immune from liability pursuant to the liability disclaimer contained in the PUC streetlight tariff. The trial justice denied that motion based on a determination that the liability disclaimer was void as against public policy because it absolved Narragansett of all liability with respect to third parties. Nearly four years after the filing of its first motion for summary judgment, Narragansett filed a second motion, on different grounds from the first, claiming it had no common law duty or contractual duty to repair the streetlight. As such, the second trial justice was confronted with what could be characterized as a different question that required a

separate analysis. *See Lynch*, 965 A.2d at 424 (holding that law of the case doctrine did not preclude consideration of a second motion for summary judgment that was based on new arguments and an expanded record). Because the record reveals that different, although closely connected, arguments were raised and considered on each summary-judgment motion, we are satisfied that the judgment in this case was not issued in contravention of the law of the case doctrine.[4]

## Duty

The primary issue on appeal is narrow: whether Narragansett owed a legal duty to George, a pedestrian, to maintain the streetlight in question.

To properly assert a claim for negligence, "a plaintiff must establish a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage." *Ouch v. Khea*, 963 A.2d 630, 633 (R.I. 2009) (quoting *Selwyn v. Ward*, 879 A.2d 882, 886 (R.I. 2005)). "Although complaints sounding in negligence generally are not amenable to summary judgment and should be resolved by fact finding at the trial court, the existence of a duty is a question of law." *Berard v. HCP, Inc.*, 64 A.3d 1215, 1218 (R.I. 2013); *see Ouch*, 963 A.2d at 633 (noting that whether a defendant owes a plaintiff a duty of care "is a question

---

[4] On the other hand, because whether a duty exists is always a question of law in a negligence action, the second trial justice could have reasonably concluded that this question should have been raised in the first summary-judgment motion; but it was nonetheless within her discretion to reach the issue.

of law to be determined by the court"). To survive summary judgment, a plaintiff must demonstrate that he or she is owed a legal duty by the defendant before they are "entitled to a factual determination on each of the remaining elements: breach, causation, and damages." *Ouch*, 963 A.2d at 633. In the absence of a legal duty, "the trier of fact has nothing to consider" and the grant of summary judgment is proper. *Berard*, 64 A.3d at 1218 (quoting *Holley v. Argonaut Holdings, Inc.*, 968 A.2d 271, 274 (R.I. 2009)).

The plaintiff argues that Narragansett's duty to repair and maintain streetlights extends to individual members of the public. The plaintiff first asserts that the PUC streetlight tariff and the city's ordinances establish this duty— particularly, the city's duty to report inoperable streetlights to Narragansett and Narragansett's duty to replace them. The plaintiff claims that there is a "concerted partnership" between the city and Narragansett to report and repair streetlights.

Once the PUC adopts a tariff, it becomes the standard for determining the duties and obligations between a regulated public utility and its customer.[5] *See* G.L. 1956 §§ 39-1-3 and 39-3-10. Narragansett provided streetlight services to the

---

[5] The PUC is vested with "the exclusive power and authority to supervise, regulate, and make orders governing the conduct of companies offering to the public" services such as streetlighting. General Laws 1956 § 39-1-1(c). We have recognized that this provision "represent[s] a clear legislative intent to grant the commission broad powers as it seeks to establish a system of rates which will be just and equitable to all concerned including the utility and its customers." *Rhode Island Chamber of Commerce Federation v. Burke*, 443 A.2d 1236, 1237 (R.I. 1982).

city pursuant to the PUC streetlight tariff that governs the terms of service, installation, maintenance, and payment for streetlight services. *See* R.I.P.U.C. No. 2031-A. The tariff provides: "All inoperable lamps which are owned and maintained by [Narragansett] will be spot replaced. The [city] is responsible for notifying [Narragansett] of inoperable lamps." *Id.* at Sheet 7. The tariff further provides that Narragansett's "duties and obligations under this tariff extend only to the [city], and not to any third parties."[6] *Id.* at Sheet 6.

Under the PUC streetlight tariff, Narragansett owes a duty to the city. The tariff does not impose any affirmative duty upon Narragansett to conduct inspections to ensure the functionality of streetlights. Significantly, the tariff plainly places the responsibility on the city to notify Narragansett of inoperable streetlights. Additionally, even if the streetlight at issue was inoperative or malfunctioning at the time of the incident, the city ordinances cited by plaintiff

---

[6] We note, without deciding the validity of the disclaimer of liability provision set forth in the PUC streetlight tariff, that, as declared by the first trial justice, exculpatory clauses that completely absolve a company of all liability with respect to third parties, even in cases of willful or wanton misconduct or gross negligence, may not comport with public policy considerations.

clearly provide that *the city* has a duty to inspect streetlights, and not Narragansett.[7]

The city ordinances and the PUC streetlight tariff simply do not establish a duty of care owed by Narragansett to individual pedestrians injured as a result of an inoperable streetlight. *Cf. Wyso v. Full Moon Tide, LLC*, 78 A.3d 747, 751, 752 (R.I. 2013) (holding that an ordinance requiring property owners to maintain an abutting sidewalk does not create a duty to individual passersby).

We now turn to the relevant common law duty factors to determine whether Narraganset owed a duty in this case. Because we have not yet had the opportunity to address the issue of whether a utility owes a duty to private individuals to maintain streetlights, we begin by discussing cases from other jurisdictions concerning this issue.

A majority of jurisdictions have concluded that motorists or pedestrians injured in vehicular accidents allegedly caused, at least in part, by inoperative streetlights were not entitled to recover from the utilities that were obligated to provide the streetlights. *See, e.g.*, *Turbe v. Government of Virgin Islands*, 938 F.2d

---

[7] The Providence Code of Ordinances, Supp. No. 4, § 23-125 (July 15, 2019), places a duty upon the city's public service engineer to inspect electrical fixtures to ensure that they are maintained in "a proper and safe manner and condition," and to inform the city council if the public utility fails to repair or maintain them. Section 23-139 requires the chief of police to report daily to the city's public service engineer on city streetlight outages. Moreover, not cited by plaintiff, § 23-136 gives the public service engineer "the general control and supervision of all public lights used by the city for illuminating its streets, highways, parks and public places."

427, 432, 433 (3d Cir. 1991) (holding that utility owed no duty to pedestrian who was assaulted because inoperable light did not increase risk of harm but rather returned the lighting conditions to their natural state); *Estate of Flygare v. Ogden City*, 405 P.3d 970, 977, 978 (Utah Ct. App. 2017) (holding that utility owed no duty to pedestrian injured in crosswalk to repair inoperable streetlight because the absence of light did not place the plaintiff in a worse position than he would have been if no streetlight was ever installed); *Blake v. Public Service Company of New Mexico*, 82 P.3d 960, 965, 966, 967 (N.M. Ct. App. 2003) (considering public policy and holding that public utility owed no duty to pedestrians to maintain streetlights because failure to repair a streetlight "does not launch any instrument of harm, given that the darkness of the street is obvious to travelers and given that there are other methods of seeing in the darkness, i.e., automobile headlamps"); *Martinez v. Florida Power & Light Co.*, 785 So.2d 1251, 1252, 1253 (Fla. Dist. Ct. App. 2001) (holding that utility owed no duty to pedestrian killed by a motor vehicle while crossing a street where streetlight was not functioning); *Vaughan v. Eastern Edison Company*, 719 N.E.2d 520, 521, 523 (Mass. App. Ct. 1999) (holding that utility owed no duty to pedestrian injured while in a crosswalk that was unlit due to inoperative streetlights); *White v. Southern California Edison Company*, 30 Cal. Rptr. 2d 431, 434, 437 (Cal. Ct. App. 1994) (holding that utility owed no contractual or common law duty to moped driver injured in a collision

that occurred at an intersection where streetlights were not functioning); *Shafouk Nor El Din Hamza v. Bourgeois*, 493 So.2d 112, 117 (La. Ct. App. 1986) (holding that the "failure of [the utility] to provide adequate street lighting was at most the deprivation of a benefit; it was not the violation of a duty"); *Quinn v. Georgia Power Co.*, 180 S.E. 246, 248 (Ga. Ct. App. 1935) (holding utility owed no duty to general public to maintain inoperable streetlight); *Cochran v. Public Service Electric Co.*, 117 A. 620, 621 (N.J. 1922) (holding that utility owed duty to city concerning inoperable streetlights but not to the general public).

In *White*, the California Court of Appeal determined that the defendant utility owed no duty to a moped driver who was injured in a collision allegedly caused by inoperative lighting at an intersection. *White*, 30 Cal. Rptr. 2d at 434, 437. The court described the issue of duty as a "policy consideration[,]" and explained that the issue requires consideration of "not only the foreseeability of harm to a plaintiff but also the burdens to be imposed against a defendant." *Id.* at 437. Specifically, the court considered:

> "the cost of imposing this liability on public utilities, the current public utility rate structures, the large numbers of streetlights, the likelihood that streetlights will become periodically inoperable, the fact that motor vehicles operate at night with headlights, the slight chance that a single inoperative streetlight will be the cause of a motor vehicle collision, and the availability of automobile insurance to pay for damages." *Id.*

- 12 -

Consequently, the *White* court concluded that "[t]he burden on the public utility in terms of costs and disruption of existing rate schedules far exceeds the slight benefit to the motoring public from the imposition of liability." *Id.*

Similarly, in *Vaughan*, the Appeals Court of Massachusetts declared that the defendant utility owed no duty to a pedestrian who alleged that her injuries were due to inoperative streetlights. *Vaughan*, 719 N.E.2d at 523, 524. Relying on *White*, the *Vaughan* court considered duty as an "allocation of risk" that required "balancing the foreseeability of harm * * * against the burden to be imposed." *Id.* (quoting *White*, 30 Cal. Rptr. 2d at 435). In adopting the majority rule that utilities have no common law duty to injured third parties to maintain streetlights, the court concluded that, although "relieving the electric company of liability may leave the 'loss on the shoulders of the individual plaintiff,'" *id.* at 523-24 (quoting Prosser & Keeton, *Torts* § 4, at 24),

> "the imposition of tort liability on those who must render continuous service of this kind to all who apply for it under all kinds of circumstances could also be ruinous and the expense of litigation and settling claims over the issue of whether or not there was negligence could be a greater burden to the rate payer than can be socially justified." *Id.* at 524 (brackets omitted) (quoting Prosser & Keeton, *Torts* § 93, at 671).

The court also noted that "[t]he failure to maintain an installed street light does not create a risk greater than the risk created by the total absence of a streetlight." *Id.* at 525 (quoting *White*, 30 Cal. Rptr. 2d at 437).

The aforementioned cases applied factors that are closely aligned with Rhode Island jurisprudence. In Rhode Island, there is no bright-line rule for determining whether a legal duty exists. The determination of duty must be made on a case-by-case basis. *Willis v. Omar*, 954 A.2d 126, 130 (R.I. 2008). However, as noted *supra*, in *Banks*, this Court adopted the following list of factors to consider when deciding whether a duty exists in a particular situation:

> "(1) the foreseeability of harm to the plaintiff, (2) the degree of certainty that the plaintiff suffered an injury, (3) the closeness of connection between the defendant's conduct and the injury suffered, (4) the policy of preventing future harm, and (5) the extent of the burden to the defendant and the consequences to the community for imposing a duty to exercise care with resulting liability for breach." *Banks*, 522 A.2d at 1225.

This Court also has cautioned that *Banks* did not limit the scope of factors that we should consider in future cases with different factual scenarios. *See, e.g.*, *Wyso*, 78 A.3d at 751. We have recognized that the duty inquiry should also reflect consideration of "all relevant factors, including the relationship of the parties, the scope and burden of the obligation to be imposed upon the defendant, public policy considerations, and notions of fairness." *Carlson v. Town of South Kingstown*, 131 A.3d 705, 709 (R.I. 2016) (quoting *Woodruff v. Gitlow*, 91 A.3d 805, 814 (R.I. 2014)).

In *Wyso*, we distinguished *Banks*, which involved a premises-liability claim against property owners brought by an invitee who was injured on the landowner's

property; *Wyso* involved a slip-and-fall on a public sidewalk not owned or controlled by the defendants. *Wyso*, 78 A.3d at 751. Because a property owner's duty arises from "the landowner's possession of the premises and his or her attendant right and obligation to control the premises[,]" *id.*, we declined in *Wyso*, and also in other cases, to find a duty where an injury occurred on property not owned or controlled by the defendant. *See id.* at 749, 751-52 (finding no duty where the plaintiff was injured on public sidewalk abutting the defendant's business); *Maguire v. City of Providence*, 105 A.3d 92, 96 (R.I. 2014) (finding no duty where the plaintiff was injured while walking on a sidewalk outside a shopping mall); *Ferreira v. Strack*, 636 A.2d 682, 684, 686-67 (R.I. 1994) (finding no duty where the plaintiffs were injured while crossing public street adjacent to the defendant's property because, *inter alia*, the defendants had no control over the property where the injury occurred).

With these considerations in mind, we turn to the case at bar. Narragansett does not own, control, or maintain the subject area; rather, the city has exclusive ownership and control of its public streets. The city's public service engineer inspects electrical fixtures within the city and is vested with "the general control and supervision of all public lights used by the city for illuminating its streets, highways, parks and public places." Providence Code § 23-136; *see* § 23-125. Additionally, there is no relationship between the parties in the case at bar that

would justify the imposition of a duty: The decedent was a member of the public who was a pedestrian but had no special or direct relationship with Narragansett. As for foreseeability of harm, while we glean a variety of unfortunate events that can befall members of the public using a public street in darkness, we must "acknowledge[] that duty is a flexible concept, that seeks to balance the degree of foreseeability of harm against the burden of the duty to be imposed." *Volpe v. Gallagher*, 821 A.2d 699, 716 (R.I. 2003) (brackets omitted) (quoting *McClung v. Delta Square Limited Partnership*, 937 S.W.2d 891, 901 (Tenn. 1996)).

If Narragansett were to be held liable to third parties for incidents allegedly caused, in part, by inoperable streetlights, then it would be required to alter its business operations by inspecting, maintaining, and replacing thousands of streetlights on hundreds of streets in the city. The cost of this mandate would result in a substantial burden on the part of the utility and a cost to its ratepayers that is not contemplated by the PUC streetlight tariff. To conclude that Narragansett owes a legal duty to pedestrians or individual members of the public to inspect and maintain streetlights would unreasonably expand the zone of obligation of the public utility and, indeed, impose an undue burden. The extent and cost cannot be justified by "the slight chance that a single inoperative streetlight will be the cause of a motor vehicle collision[.]" *White*, 30 Cal. Rptr. 2d at 437. At night, motor vehicles generally are driven with headlights illuminating

the way; therefore, "it is unlikely that a single inoperable streetlight will be a substantial factor in causing a collision[.]" *Id.*

Considering the facts of this case in conjunction with well-settled Rhode Island law and the prevailing view of jurisdictions that have considered this issue, we conclude that a public utility generally owes no common law duty to individual third parties who are allegedly injured, at least in part, as a result of inoperable streetlights.

## Conclusion

For these reasons, we affirm the judgment of the Superior Court. The papers in this case may be returned to the Superior Court.

Justice Long did not participate.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Jean Laprocina, as Administratrix of the Estate of George N. Laprocina v. Nicole C. Lourie et al. |
| **Case Number** | No. 2019-191-Appeal. (PC 13-6459) |
| **Date Opinion Filed** | May 26, 2021 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Lynch Prata, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Melissa A. Long |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Mark A. Fay, Esq. |
| | For Defendant:<br><br>Mark P. Dolan, Esq.<br>Mark P. Dolan, Jr., Esq. |