OPINION
Justice Flaherty,
for the Court.
“Jarndyce and Jarndyce drones on. This scarecrow of a suit has, in course of time, become so complicated, that,no man alive knows what it means. The parties to it understand it least; but it has been observed that no two Chancery lawyers can talk about it for five minutes, without coming to a total disagreement as to all the premises. Innumerable children have been born into the cause; innumerable young people have married into it; innumerable old people have died out of it. Scores of persons have deliriously found themselves made parties in Jarndyce and Jarndyce, without knowing how or why; ■ whole families have inherited legendary hatreds with the suit. The little plaintiff or defendant, who was promised a new1 rocking-horse when Jarndyce and Jarndyce should be settled, has grown up, possessed' himself of a real horse, and trotted away into the other world, * * * Jarndyce and Jarndyce still drags its dreary length before the Court, perennially hopeless.”[1]
This case arises from a briar patch of litigation between feuding neighbors'who are unable to agree about many things, including, particular to this ease, the de *472 tails of an easement that resulted from a court-mandated land partition. The underlying legal battle began in August 2000. By May 2005, Carol and A. L. Ballard had filed an answer to SVF Foundation’s[2] fifth amended complaint. Within that pleading, the Ballards counterclaimed, alleging that, among other things, SVF Foundation was interfering with the Ballards’ easement that ran across SVF’s property.[3] SVF moved for summary judgment on that count, and the Superior Court granted SVF’s motion. The Ballards timely appealed to this Court, challenging the Superior Court’s decision granting summary judgment to SVF.
This matter came before the Supreme Court for oral argument on January 25, 2017. After carefully reviewing the record, and after considering the parties’ written and oral arguments, we vacate the Superi- or Court’s judgment.[4]
I
Facts and Travel
A
The Ballards and Hamilton were once cordial acquaintances who teamed up to save Newport’s historic Edgehill property from development. Together, they purchased the property at auction, taking title as tenants in common. Shortly thereafter, the parties’ relationship began to sour and eventually became acrimonious. Ultimately, the Edgehill property was divided pursuant to a court-ordered partition.
At the time the Ballards and Hamilton purchased the Edgehill property, it consisted of two distinct areas. The western portion of the estate contained “a fascinating masonry complex known as the ‘Swiss Village[.]’ ” Meanwhile, located on the eastern part of the Edgehill property were the Manor House and the Carriage House. The Manor House is a striking building designed by the famous American architects McKim, Mead & White. It sits on grounds designed by the equally prominent Frederick Law Olmsted. The Carriage House was built concurrently with the Manor House and is located nearby “in a swale between the Manor House and * * * the ‘Swiss Village[.]’ ”
The partition left Hamilton, SVF’s predecessor, with the Swiss Village portion of the estate, and the Ballards with the Man- or House and Carriage House section (the “Manor House Property”). Carol and A. L. Ballard each took an undivided 50 percent interest in the property they received from the partition. In addition to her undivided 50 percent interest in the Manor House Property, Carol Ballard owned, in her own name, an undeveloped tract of land known as “Lot 20” that abutted the western edge of the Swiss Village property. Carol Ballard purchased Lot No. 20 in 1995, before the Ballards had acquired any ownership interest in the Edgehill property. After the partition went into effect, there were three tracts of land relevant to this case. To the west lay Carol Ballard’s solely owned Lot No. 20. To the east was the Manor House Property, of which Carol and A. L. Ballard each owned an undivided 50 percent interest. And lying directly between Lot No. 20 and the Manor House Property, and abut *473 ting both properties, was the Swiss Village land, owned by the Dorrance H. Hamilton Trust.
As a result of the partition, the Ballards were left without any interior access between the Manor House Property and Lot No. 20. Accordingly, they sought an easement to connect their two properties so that they could transport mowing equipment from the Manor House Property to Lot No. 20 without having to use public roads, ostensibly for safety reasons. In his supplemental report and recommendation, the court-appointed commissioner assigned to oversee the partition recommended that the Ballards be granted their requested easement. The Superior Court, in its order mandating the partition, awarded the Bal-lards “an easement providing access to Lot 20 as recommended in the Commissioner’s Supplemental Report * * *, subject to the restrictions and stipulations noted in the Supplemental Report.”
The “restrictions and stipulations” to which the judgment refers are:
“[T]he Commissioner recommends granting an easement for access in favor of the owners of the Carriage House and Manor House. The easement should be considered personal to such owners, be it the Ballards or their successors, for so long as the owners of the Carriage House parcel and/or the Manor House parcel also retain an ownership interest in lot # 20.”
After granting the easement,[5] the Superior Court commissioned Waterman Engineering Co. to file a final class 1 survey of the partitioned land. That survey clearly indicated the easement’s location traversing across the Swiss Village property. The survey also specified that the easement was to be fifteen feet wide.[6]
B
At the time the Superior Court granted the Ballards their easement, there was no road or path that connected the Manor House Property to Lot No. 20. Thus, the Ballards and SVF had to build a road. It should be a surprise to no one that the parties were unable to agree on the details of how to build the byway that would cross the easement or the width of the gates that were to be placed at each end of the easement. This disagreement led to a litany of tit-for-tat litigation[7] too lengthy to recount in full. Relevant to this appeal, however, are a motion for relief from judgment that the Ballards filed in February 2005 pursuant to Rule 60(b) of the Superi- or Court Rules of Civil Procedure, in which the Ballards sought to have the location of the easement moved, and count 7 of the Ballards’ counterclaim, filed in May 2005, which alleged that SVF interfered with the Ballards’ easement.
*474 -Litigation surrounding the easement encompassed multiple hearings, as well as two judicial views of the property on which the easement sat. In August 2005, a Superior Court justice ordered SVF, the owner of the servient estate, to construct “a farm-type road as described by the [cjourt during the colloquy at [the June 27, 2005] hearing” to accommodate the Ballards’ easement.'At that hearing,-the Superior Court justice described the requirements of the farm road to be constructed as follows:
“a road that on either side of a middle rise on which there is often flowers and weeds, on either side there are tracks that are wide enough not merely for motor vehicles but for those wide tires or'double tires that one sees on farm vehicles and farm wagons and other equipment used in farming and cultivation. * * [I]t would be graded in such fashion that it would be safe for the operation of a tractor or similar vehicle ■ over the road, and it would be graded in the middle of that farm road so that the ..-suspension, or undercarriage of the farm vehicles would not touch it as they passed oyer it.”
i Despite the hearing justice’s fairly detailed description of. the “farm road” SVF was-‘to, bmld, the parties were never able to agree on the exact specifications of either the road or the gates that were to be placed at either end of the easement. Nevertheless, SVF went ahead and constructed a dirt road during the spring of 2006. Notwithstanding the fact that the recorded easement was fifteen feet wide, the path, as constructed, narrowed to approximately tweíve feet at times. Also, SVF installed gates that were ten feet wide at either end of the fifteen-foot-wide easement. Needless to say, the Ballards were dissatisfied with both the road and the gates.' The Ballards insisted that, although the lawnmower that they owned at the time, which was approximately six feet wide, could travel safely on the farm road, they were planning on purchasing a new mower that would be fourteen feet three inches wide. As a result, in August 2006, two more days of hearings ensued.
• At a January 2007 hearing, which appears to have been held in response- to SVF’s motion to eliminate the easement, the hearing justice, after he took a second view of the property, attempted to put an end to the dispute over the road, saying:
“There is no way that this [cjourt in the person of yours truly or in any other judge can constantly supervise the-prolonged and protracted bickering between these parties who, apparently, have no limits to the resources they can spend on capable counsel to prolong this contest, but the [c]ourt, really, has got to bring some finality to'this * * *.
“The Ballards wanted an easement, they got an easement. It may not be following the exact course that they would have liked and it also would not afford them a wheel base of 13 feet, but under law of easements it does provide them with the use that the easement was ordained; namely, to .get farm vehicles, including tractors, from one section of the Ballard property to another.”
After the hearing, an order entered that said, in relevant part, that SVF had “constructed a farm road providing reasonable access to the [Ballards]” that “satisfied [the Superior] Court’s previous orders.” The order added that, “[b]ased on the evidence presented at the hearing, and the [c]ourt’s views of the subject property, the [cjourt finds that the 10 foot gates do not impinge on the Ballards’ reasonable use of the access easement * *
Despite the January 2007 order, final judgment did not enter on any' of the counts contained within SVF’s fifth amended complaint or the Ballards’ counterclaim *475 thereto. The case languished,- more or less, until June 2014, when SVF moved for summary judgment on count 7 of the Ballards’ counterclaim, which alleged that SVF was interfering with their easement.[8] Ultimately, a different Superior Court justice granted summary judgment pursuant to Rule 56 of the Superior Court Rules of Civil Procedure in favor of SVF, and then entered final judgment under Rule 54(b) of the Superior Court Rules of Civil Procedure on count 7 only.[9] The Ballards timely appealed that judgment to this Court.
C
In 2012, before final judgment entered, A. L. Ballard conveyed 90 percent of his undivided 50 percent interest in the Manor House Property to Ballard Properties, LP. Thus, when final judgment entered in 2014, the ownership interests in the Manor House Property were as follows: Ballard Properties, LP had a 45 percent undivided interest; A. L. Ballard retained a 5 percent undivided interest; and Carol Ballard owned a 50 percent undivided interest. Also at the time of final judgment, Carol Ballard maintained the entire ownership interest in Lot No. 20,
However, after the Ballards filed their notice of appeal, both the Manor House Property and Lot No. 20 changed ownership. In August 2015, Carol Ballard “conveyed .her undivided 50 percent interest in [the Manor House Property] to [her] daughter * * Then, in March 2016, Carol Ballard transferred, by quitclaim deed, her entire interest in Lot No. 20 to Ballard Properties, LP.[10] Importantly, as a result of Carol Ballard’s two property transfers, during the eight-month period between August 2015 and March 2016, the Manor House Property and Lot No. 20 did not share a common owner.[11]
II
Discussion
A
Issues on Appeal
On appeal, the Ballards argue that the hearing justice erred when he granted *476 summary judgment because material issues of fact remained in dispute. Subsumed within that broad attack on summary judgment, the Ballards contend that the hearing justice inappropriately applied the law-of-the-case doctrine, thereby “relying on purported ‘findings’ for which there was no evidentiary basis” when he granted SVF’s motion for summary judgment.
In addition to countering the Ballards’ arguments on appeal, SVF argues to this Court that the matter has been rendered moot during the pendency of this appeal because Carol Ballard conveyed her interest in the Manor House Property to Leslie Ballard Hull. Thus, SVF argues, the easement has been extinguished by its own terms.
B
Standard of Review
“We review a hearing justice’s grant of summary judgment de novo.” Tri-Town Construction Co. v. Commerce Park Associates 12, LLC, 139 A.3d 467, 474 (R.I. 2016) (citing Sullo v. Greenberg, 68 A.3d 404, 406 (R.I. 2013)). “Summary judgment is an extreme remedy and should be granted only when ‘the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as [a] matter of law.’ ” Plunkett v. State, 869 A.2d 1185, 1187 (R.I. 2005) (quoting Wright v. Zielinski, 824 A.2d 494, 497 (R.I. 2003)). “Only when a review of the admissible evidence viewed in the light most favorable to the nonmoving party reveals no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, will this Court uphold the trial justice’s grant of summary judgment.” National Refrigeration, Inc. v. Standen Contracting Co., 942 A.2d 968, 971 (R.I. 2008) (quoting Carlson v. Town of Smithfield, 723 A.2d 1129, 1131 (R.I. 1999)). The party opposing “a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions.” Id. (quoting Accent Store Design, Inc. v. Marathon House, Inc., 674 A.2d 1223, 1225 (R.I. 1996)).
C
Law-of-the-Case
i
In June 2014, SVF filed a motion for summary judgment on count 7 of the Ballards’ counterclaim, which alleged that SVF was interfering with the Ballards’ easement. Within the memorandum that accompanied that motion, SVF argued that summary judgment should be granted because, according to SVF, the January 2007 order had already “decided the issues related to the access easement.” Accordingly, SVF believed that the law-of-the-case doctrine should apply. That doctrine “states that ordinarily after a judge has decided an interlocutory matter in a pending suit, a second judge, confronted at a subsequent phase of the suit with the same question in the identical manner, should refrain from disturbing the first ruling.” State v. Infantolino, 116 R.I. 303, 310, 355 A.2d 722, 726 (1976) (citing Rhode Island Ophthalmological Society v. Cannon, 113 R.I. 16, 20, 317 A.2d 124, 126-27 (1974)).
In October 2014, a hearing was conducted on SVF’s motion. At that proceeding, after accepting SVF’s argument that law-of-the-case should apply with respect to the January 2007 order, the hearing justice asked the Ballards’ attorney if he was “saying anything to me today that you *477 didn’t say to [the hearing justice in 2007]; yes or no?” The Ballards’ attorney replied, “I would say no.” Despite acknowledging that “[i]t doesn’t take a genius to know that if the space is ten feet, a 15-foot mower is not going to fit[,]” the hearing justice applied the January 2007 order to the motion before him. Three days after the hearing, an order entered granting SVF’s motion for summary judgment. That order tersely said, “[t]he previous rulings of [the hearing justice in 2007] with respect to the access easement may stand and, accordingly, summary judgment is granted as to the Ballards’ [c]ount [7] * * *.” Final judgment entered shortly thereafter.
ii
The Ballards argue that the law-of-the-case doctrine is inapplicable in this situation because, not only had the circumstances changed since the January 2007 order, but also that the order “was based on factual errors and was manifestly erroneous in law.” Specifically, the Ballards argue that the January 2007 order was “an interlocutory ruling that was expressly based on * * * ‘findings’ derived from a view.” The Ballards assert that those findings were erroneous because “a view is not evidence.” Additionally, the Ballards claim that the fact that they now own a different mower than they did in 2007 constitutes a change in circumstances that should make the law-of-the-case doctrine inapplicable.
The Ballards go on to argue that, in 2014, the hearing justice was not addressing the ‘“same question[]’ raised in an ‘identical manner,’ ” as the hearing justice in 2007. Moreover, the Ballards contend that, because the hearing justice, in relying on the law-of-the-case doctrine, foreclosed new arguments, they were not “able to make an evidentiary record that what SVF ha[d] done constitute^] a nuisanee because it [was] interference with [their] 15-foot easement * * *.” Without that evi-dentiary record, the Ballards maintain, their effort to show that there was a material issue of fact in dispute was precluded.
SVF maintains that the hearing justice correctly applied the law-of-the-case doctrine because, according to SVF, the issues before the Superior Court in 2014 had been decided in 2007, including “issues related to the location, nature, and size of the Access Easement” at the time of its summary-judgment motion. It is our conclusion, however, that SVF confuses those issues, which were tied to the Ballards’-Rule 60(b) motion, with issues stemming from the ongoing litigation surrounding SVF’s fifth amended complaint and the Ballards’ related counterclaims to that complaint.[12] Importantly, count 7 of the Ballards’ counterclaim, which alleges unreasonable interference with their easement and seeks, in large part, injunctive relief that would bar SVF from impeding the Ballards’ use of the easement, is distinct from their Rule 60(b) motion, which sought to relocate the easement.
SVF argues that the January 2007 order—which found, among other things, that the ten-foot-wide gates did not impinge on the Ballards’ easement—was akin to final judgment, claiming that the hearing justice “ended the dispute” when he entered that order. Accordingly, SVF attempts to argue that, not only should the law-of-the-case doctrine control the hearing justice’s 2014 decision, but also that *478 the Bailarás’ request for review by this Court is untimely because they should have appealed directly from the January 2007 order.
But, in fact, the Bailarás did seek review of that order. Shortly after the order entered, the Bailarás petitioned this Court for a writ of certiorari. SVF, in its opposition to the issuance of that writ, argued that granting a writ of certiorari at that time was inappropriate because the Bai-larás were appealing from an interlocutory order.[13] It is, at the very least, contradictory, if not worthy of estoppel by judicial admission, for SVF to now contend that the January 2007 order was analogous to final judgment when it energetically argued that the same order was interlocutory in 2007. It is our opinion that the January 2007 order was interlocutory in nature.
iii
We acknowledge that the law-of-the-case doctrine is well established in this jurisdiction. See Goodman v. Turner, 512 A.2d 861, 864 (R.I. 1986). We have said that it “generally ought to be adhered to for the principal reason that it is designed to promote the stability of decisions of judges of the same court and to avoid unseemly contests and differences that otherwise •might arise among them to the detriment of public confidence in the judicial function.” Id. (quoting Payne v. Superior Court for Providence County, 78 R.I. 177, 184-85, 80 A.2d 159, 163 (1951)).
At the same time, the “law-of-the-case doctrine does not have the finality of res judicata * * Richardson v. Smith, 691 A.2d 543, 546 (R.I. 1997). Although we have not explicitly said so previously, we believe, and our case law indicates, that when we have held that law-of-the-ease applies if the same question is presented in an “identical manner,” that does not mean that it is appropriate to apply law-of-the-case from an interlocutory ruling to a dis-positive motion. See, e.g., Goodman, 512 A.2d at 864 (holding that law-of-the-case applies from a summary judgment motion to a motion to dismiss); Rhode Island Hospital Trust National Bank v. National Health Foundation, 119 R.I. 823, 829, 384 A.2d 301, 305 (1978) (law-of-the-case “may bar consideration of successive motions for summary judgments”); Infantolino, 116 R.I. at 311, 355 A.2d at 726 (holding that law-of-the-case applies to successive motions to suppress).
iv
It is our opinion that the trial justice erred when he employed the law-of-the-case doctrine in his ruling on SVF’s motion for summary judgment. Law-of-the-case is merited when “the same question” is presented “in the identical manner.” Infantolino, 116 R.I. at 310, 355 A.2d at 726. Here, it cannot be said that the issues in the January 2007 order and the 2014 summary-judgment decision presented the same question. Furthermore, assuming without deciding that the same question was raised, it certainly was not presented in the identical manner at both hearings. The January 2007 order was interlocutory in nature, while the summary-judgment decision was dispositive. More-' over, the enormous passage of time between the January 2007 order and the summary-judgment proceedings in 2014 cannot escape our notice. Given the different manners in which the question was presented in the 2007 and 2014 hearings, it was, in our view, incorrect to apply law-of-the-case in 2014. Therefore, the hearing *479 justice erred when he granted summary judgment.[14]
D
Has the Easement Been Extinguished?
We turn now to SVF’s argument that the easement has been extinguished subsequent to the Superior Court’s entry of final judgment, thus rendering this matter moot. Although mootness was not raised before the Superior Court, we consider mootness to be a threshold issue of justiciability and hot subject to the strictures of our raise-or-waive doctrine. See Boyer v. Bedrosian, 57 A.3d 259, 271-72 (R.I. 2012). This Court has “consistently held that a case is moot if the original complaint raised a justiciable controversy,- but events occurring after the filing have deprived the litigantes] of a continuing stake in the controversy.” Bucci v. Lehman Brothers Bank, FSB, 68 A.3d 1069, 1079 (R.I. 2013) (quoting Boyer, 57 A.3d at 272).
SVF contends that the easement contains an express limitation that requires the easement to terminate on its own terms upon the occurrence of a condition subsequent; namely, if the owners of-' the Manor House Property fail to also retain an ownership interest in Lot No. 20. This, it argues, occurred in August 2015. According to SVF, at the moment when Carol Ballard conveyed her 50 percent undivided interest in the Manor House Property to Leslie Ballard Hull the easement expired on its own- terms.[15]. - ■
The Ballards, meanwhile, argue that the easement has not been extinguished because, despite Carol Ballard’s- conveyance of her interest in the Manor House Property in August 2015, the intent expressed in the document that created the easement was, at all times, met.[16] In essence, the Ballards assert that, because Carol Ballard, for estate-planning purposes, transferred her interest in' the Manor House' Property to her daughter, the property nonetheless remained in the family. Therefore, even if the Manor House Property and Lot No. 20 did not retain common owners from a legal perspective, common ownership was, nonetheless, maintained as a functional matter. The' Ballards contend that the easement could be extinguished only if the Manor House Property and Lot No. 20 “were ever to become permanently alienated through conveyance of one" or another to an unrelated third party[.]”
It is well settled that an easement may terminate by expiration. See Jackvony v. Poncelet, 584 A.2d 1112, 1114 (R.I. 1991); see also James H. Backman, & David A. Thomas, A Practical Guide to Disputes Between Adjoining Landowners—Easements § 1.05[2] at 1-42 .(2016) (“easements exist that are subject' to termination on a specified condition subsequent or another defeasible event, as is the case with regard to estates generally”). “No notice of termination is necessary” to extinguish an easement “when the [ease *480 ment] by its very terms provides therefore.” Moulson v. Iannuccilli, 84 R.I. 85, 90, 121 A.2d 662, 664 (1956) (citing Akasu v. Power, 325 Mass. 497, 91 N.E.2d 224, 226 (1950) (“An easement may be granted which will terminate upon the happening of some particular act or upon the nonperformance of a condition subsequent.”)). Moreover, “[t]he result of a finding that an easement has been terminated is that the complete control of the land will ordinarily return to the owner of the underlying fee or servient tenement.” David A. Thomas, 7 Thompson on Real Property § 60.08(d) at 576 (2d ed. 2006).
This Court has
“long adhered to the following basic principle: ‘[W]here in a written instrument an easement of way is granted in express terms, the nature and extent of the easement thus established is to be determined primarily from the language used in the writing, and if the terms thereof are free from uncertainty and ambiguity, oral testimony is not admissible to explain the nature or extent of the easement grant.’” Grady v. Narragansett Electric Co., 962 A.2d 34, 45 (R.I. 2009) (quoting Waterman v. Waterman, 93 R.I. 344, 349, 175 A.2d 291, 294 (1961)).
Moreover, “[i]n construing the reservation * * * we seek only that intention expressed in the instrument and not some undisclosed intention that the parties may have had in mind.” Thomas v. Ross, 119 R.I. 231, 240, 376 A.2d 1368, 1373 (1977).
SVF argues that, if the easement has been extinguished, then this appeal is moot. Indeed, the Ballards seem to concede this point in their brief to this Court. After citing several cases, the Ballards urge that “[m]ootness [arises] in each case because * * * the subject of the litigation had unquestionably ceased to exist.”[17] This, they maintain, is not what occurred here. We agree with the parties that, if the easement has been extinguished, then this case has become moot. However, given the undeveloped state of the record on this issue, we believe it to be unwise to determine whether the easement has, in fact, been extinguished without further proceedings in the trial court.
Ill
Conclusion
For the reasons set forth in this opinion, we vacate the Superior Court’s judgment. We remand the record to that tribunal.

. Charles Dickens, Bleak House 3 (Bradbury & Evans) (1853).

. SVF Foundation is the successor in interest to the Dorrance H. Hamilton Trust, of which Dorrance H. Hamilton was a trustee.

. Because of the many complaints and counterclaims in this case, it is confusing to refer to the parties as plaintiff and defendant, as each party is, at times, postured as both plaintiff and defendant. For clarity, we will refer to the parties by name.

.Final judgment ordering the partition entered in December 2002. This litigation has been grinding on for the better part of two decades.

. There were multiple easements granted as part of the court-ordered partition. This appeal involves only the interior access easement that connects the Manor House Property to Lot No. 20. Any reference to an easement within this opinion refers to the interior access easement only.

. The December 2002 order, which mandated the partition, adopted "the findings and recommendations of the Court-Appointed Commissioner” that, among other things, created the Ballards’ access easement. That order went on to say that "[t]he parties may, at any time, commission Waterman Engineering to perform a survey to confirm the metes and bounds descriptions ⅜ ⅜ Needless to say, the parties did require Waterman Engineering’s services; and, at the direction of the court, the class 1 survey was completed on July 23, 2004.

.At an August 2006 hearing, a Superior Court justice remarked, during a colloquy with the attorneys, "I confess, I vacillate back and forth to figure out which one of your clients is the more obstinate or the more unreasonable.”

. Count 7 of the Ballards' counterclaim, in large part, sought injunctive relief to bar SVF from interfering with the easement. It was filed before SVF constructed the farm road in the spring of 2006.

. The justice who granted summary judgment is not the same justice who presided over the case when the January 2007 order entered. Not surprisingly, that justice retired years before final judgment entered in 2014. Moreover, the justice who presided over the case in 2007 was not the same justice who presided over the case when the partition was ordered in 2002. That justice had also retired.

. The Ballards attempted to supplement the record with an affidavit that attested to the date that Carol Ballard conveyed Lot No. 20 to Ballard Properties, LP.' This Court, however, denied the Ballards’ motion to supplement the record, and that affidavit is not part of this case’s record. Nevertheless, this Court may take judicial notice of public records, including deeds. See- Rule 201(c), (b)(2) of the Rhode Island Rules of Evidence ("A court may take judicial notice, whether requested or not. * ⅜ * a judicially noticed fact must be one not subject to reasonable dispute * * * [and] capable of accurate and ready determination by resort to sources whose accuracy cannot -reasonably be questioned.”). Accordingly, we take judicial notice of the quitclaim deed dated March 30, 2016, recorded in the City of Newport land evidence records that indicates that Carol Ballard granted to Ballard Properties, LP "all [her] right, title and interest” in Lot No. 20,

.Between August 2015 and March 2016 ' ownership interests in the Manor House Property were as follows: Ballard Properties, LP had a 45 percent undivided interest; A. L. Ballard retained a 5 percent undivided interest; and the Ballards’ daughter, Leslie Ballard Hull, owned a 50 percent undivided interest. During this same time period, Carol Ballard retained a 100 percent ownership interest in Lot No. 20.

. The Ballards filed their motion pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure in February 2005. SVF filed its fifth amended complaint in April 2005, followed by the Ballards' answer and counterclaim, filed in May 2005. Pending before the court when it issued the January 2007 order was a motion to compel filed by the Ballards and a motion to eliminate the easement filed by SVF.

. This Court did not grant the writ of certio-rari.

. In so holding, we do not mean to say that, if appropriate, the law-of-the-case doctrine may not be applied at trial.

. The exact language from the Commissioner’s Report that SVF contends created an express limitation on the easement says, ”[t]he easement should be considered personal to such owners, be it the Ballards or their successors, for so long as the owners of the Carriage House parcel and/or Manor House parcel also retain an ownership interest in lot #20.’’-

.We pause to note that neither party disputes that Carol Ballard conveyed her interest in the Manor House Property to Leslie Ballard Hull in August 2015, or that she conveyed her interest in .Lot No. 20 to Ballard Properties, LP in March 2016.

. The Ballards cite the following cases: Campbell v. Tiverton Zoning Board, 15 A.3d 1015 (R.I. 2011); State v. Medical Malpractice Joint Underwriting Association, 941 A.2d 219 (R.I. 2008); Cicilline v. Almond, 809 A.2d 1101 (R.I. 2002); Associated Builders & Contractors of Rhode Island, Inc. v. City of Providence, 754 A.2d 89 (R.I. 2000).