April 10, 2018

**Supreme Court**

| | | |
|---|---|---|
| Carol C. Ballard et al. | : | No. 2015-351-Appeal. |
| | | (NC 13-499) |
| v. | : | |
| SVF Foundation. | : | |
| SVF Foundation | : | No. 2015-352-Appeal. |
| | | (NC 08-655) |
| v. | : | |
| Carol C. Ballard et al. | : | |
| Dorrance H. Hamilton et al. | : | No. 2015-353-Appeal. |
| | | (NC 00-340) |
| v. | : | |
| Carol C. Ballard et al. | : | |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| | | |
|---|---|---|
| Carol C. Ballard et al. | : | No. 2015-351-Appeal. |
| | | (NC 13-499) |
| v. | : | |
| SVF Foundation. | : | |
| SVF Foundation | : | No. 2015-352-Appeal. |
| | | (NC 08-655) |
| v. | : | |
| Carol C. Ballard et al. | : | |
| Dorrance H. Hamilton et al. | : | No. 2015-353-Appeal. |
| | | (NC 00-340) |
| v. | : | |
| Carol C. Ballard et al. | : | |

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  Before this Court is yet another chapter in the long-running spat between Newport's renowned feuding neighbors, Carol C. Ballard and A.L. Ballard (the Ballards) against SVF Foundation (the Foundation) and its predecessor owner, the Dorrance H. Hamilton Trust (the Trust), regarding the former "Edgehill property" located in Newport, Rhode Island. The parties have engaged in an embittered and unseemly battle that has endured for more than seventeen years.  In the multiple cases that have been filed in the Superior Court—presided over by a series of intrepid trial justices—not a single count, claim, or counterclaim has proceeded to trial.[1]  Rather, a plethora of summary judgments and Rule 54(b) judgments abound. The Ballards currently appeal from summary judgments and an order of dismissal entered by the

---

[1] *See Moore v. Ballard*, 914 A.2d 487 (R.I. 2007); *Hamilton v. Ballard,* 161 A.3d 470 (R.I. 2017).

- 1 -

Superior Court, on the eve of trial, in these consolidated cases. The parties appeared before the Supreme Court for oral argument on November 7, 2017. After carefully reviewing the record and considering the parties' written and oral submissions, we affirm the judgment in all respects.

### Facts and Travel

In early 2001, in the context of pending litigation, the Superior Court ordered a partition of the Edgehill property and appointed a partition commissioner (the commissioner) to assess the equities and recommend a fair division of the property between the Ballards and the Foundation's previous owner, the Trust.[2] On February 8, 2002, the commissioner issued his report, including his findings and recommendations; on September 27, 2002, the commissioner issued a supplemental report and recommendation. The Superior Court adopted the commissioner's findings and recommendations, and a judgment of partition entered on December 16, 2002. The Ballards and the Foundation were awarded equal portions of the property—specifically, the Foundation was awarded approximately 17.172 acres, comprising a masonry complex known as the "Swiss Village," and the Ballards were awarded 11.478 acres, which included two structures known as the "Manor House" and the "Carriage House." Carol Ballard also owned a separate parcel identified as "Lot 20," an undeveloped lot that abuts the Edgehill property on the westerly side.[3] Lot 20 is featured in the current phase of this battle. The partition order was not challenged by either side, and it ripened into a final judgment. However, the parties' incessant squabbles over access easements and sewer debate have persisted for many years. This Court has been confronted with a petition for relief from the partition judgment arising from an access easement, the unending sewer debate, as well as

---

[2] For convenience, we shall refer to the Foundation as the owner throughout this opinion.

[3] Carol Ballard originally bought Lot 20 in 1995; it is now owned by Ballard Properties, LP.

numerous amendments to the original complaint, additional claims, counterclaims, and new complaints.[4]

**The Sewer System and Lot 20**
**(NC-2000-0340)**

Among the post-partition disputes from which these appeals arise was the Edgehill property sewer system (the sewer system). Questions about joint responsibility for the sewer system and whether the sewer system could be utilized to service adjacent lots were raised during the partition proceeding. The Ballards sought, and were denied, an easement to connect Lot 20 to the sewer system; their request had been opposed by the Foundation. This was not the Ballards' first attempt to do so, nor was it their last. Indeed, it is fair to say that much of this litigation has centered on the Ballards' persistent efforts to expand the sewer system for their personal benefit. On September 27, 2002, the commissioner issued his supplemental report and recommendation to address the post-partition sewer system issues. The commissioner expressly determined that it was not necessary to address whether the Ballards may access the sewer system to service abutting properties such as Lot 20, as that issue did not relate to the partitioned estate.

On December 6, 2002, the Superior Court issued an order of partition that adopted the original and supplemental findings and recommendations of the commissioner. As explained in the order, the sewer pump facility and its sewer lines serviced the Swiss Village, the Manor House, and the Carriage House. The trial justice awarded the Ballards and the Foundation—in joint ownership—all the benefits and rights to the sewer pump station, the forced main sewer line, and the main sewer feed line on the Edgehill property, and directed that any repair and

---

[4] As discussed below, in 2005, the Foundation filed a fifth amended complaint in case number NC-2000-0340. In response, the Ballards filed numerous counterclaims.

maintenance responsibilities be allocated on a pro rata basis. The order also awarded individual ownership of any lateral sewer lines located on the parties' respective properties. The Superior Court declared that "[t]o the extent that other necessary but unspecified utility or drainage lines, conditions or facilities exist which predate the partition, such shall be deemed pre-existing easements by necessity or implication which inure to the benefit of the dominant tenant." The Ballards are before the Court arguing that the sewer system qualifies as an "unspecified utility or drainage line." Although no appeal was taken by either party from the partition judgment, the Ballards' efforts to connect the sewer system to Lot 20 have persisted.

In a 2005 fifth amended complaint in the original action, the Foundation sought injunctive relief to prevent the Ballards from connecting Lot 20 to the Edgehill property's sewer station.[5] The Ballards then filed an answer and counterclaim, which included claims for trespass, declaratory judgment, and an accounting.[6] A decade later, in 2015, with the trial date looming, the Ballards moved to amend their counterclaim to add a new count, seeking a declaration that an implied easement to access the sewer system arose when they bought Lot 20. The motion to amend was denied. No appeal was taken.

---

[5] There were numerous counts set forth in the Foundation's fifth amended complaint: Count I, injunctive relief for the sewer system; Count II, injunctive relief for overburdening an access easement; Count III, accounting relative to the Edgehill property; Count IV, unjust enrichment; Count V, implied easement or easement arising as a matter of law; Count VI, trespass; Count VII, wetlands violations; Count VIII, quiet title/acquiescence; Count IIX [*sic*], fraud; and Count IX, slander of title.

[6] The Ballards' counterclaim alleged: Count I, trespass; Count II, malicious prosecution; Count III, abuse of process; Count IV, waste; Count V, declaratory judgment; Count VI, accounting; and Count VII, unreasonable interference with easement.

**The Driveway Easement**
**(NC-2013-0499)**

An easement that is described in the commissioner's report and recommendation as "a driveway easement for access to the Carriage House" (the driveway easement) is also before us on appeal.[7] The driveway easement provided the Ballards with access to a driveway over the Foundation's property to the Carriage House. Due to zoning setback requirements, this easement was a necessary part of the partition judgment. Two stone pillars stood at the entrance to the driveway: one on the Foundation's property and the other on the Ballards' property, with an iron gate between them. The stone pillars and the iron gate were in poor condition and in need of repair. Given the parties' toxic relationship, it was only a matter of time before this circumstance led to acrimony and litigation.

The Ballards, concerned about the appearance and the condition of the pillars and the gate, sought to initiate the restoration of these structures. A.L. Ballard approached the Trust, the owner at the time, with an offer to relocate the pillars and to move the driveway. Before this Court, the Ballards allege that, after replacing the pillars and gate and relocating the driveway, thus eliminating the need for access to the Foundation's property, they nonetheless intended to continue to use "their easement." They planned to install a garden with landscaping and a grass or gravel path for foot or vehicular traffic over "their easement"; and not for its original purpose as "an access easement over existing driveway to [the] Carriage House." Indeed, at a July 9, 2015, pretrial conference, the Ballards' counsel argued to the trial justice that "the whole purpose

---

[7] Another easement, known as the "interior access easement," was litigated in case number NC-2000-340 in the context of a motion for relief from a judgment. The issue came before us in *Hamilton*, 161 A.3d at 480. This court vacated the trial justices' judgment and remanded for further proceedings. The issue remains pending in the Superior Court.

of moving the driveway is so we can landscape on our easement[.]"  Counsel also argued that the Ballards moved the driveway but that "[w]e didn't move the easement."

According to the Foundation, it agreed to the offer to relocate the driveway and move the pillars onto the Ballards' property; however, in return, the Foundation declared its intent to erect a fence on its property, where the stone pillar once stood.  The Foundation also contends that, by relocating the driveway, the Ballards abandoned the driveway easement.  Despite knowing the Foundation's intention once the driveway was relocated, the Ballards claim that they "proceeded with the project of relocating and rebuilding the stone pillars and relocating the carriage house driveway."  Thereafter, the Foundation began installing the fence, and another donnybrook erupted.

The Ballards filed a new complaint in Superior Court on December 16, 2013, seeking to enjoin the Foundation from erecting the fence and obstructing their use and enjoyment of "their easement."[8]  The Ballards argued that, notwithstanding their request to move the pillars and relocate the driveway, and the Foundation's conditional acceptance, they had no intention of abandoning the driveway easement.  The Foundation responded that the proposal to relocate the driveway was accepted based on the understanding that the Foundation would install a fence at the entry of the driveway.  The Foundation also filed a counterclaim alleging several counts, including a request for a declaration that the Ballards had abandoned the driveway easement.

These consolidated actions were set for trial on July 29, 2015.

---

[8] The 2013 complaint filed by the Ballards related to the driveway easement and Lot 20.  It alleged: Count I, seeking to restrain or enjoin the Foundation from obstructing and interfering with the Ballards' driveway easement; and Count II, seeking a declaratory judgment that the Ballards have a right to make improvements on their Lot 20 easement (which had also been created by the 2002 partition judgment).

**Pretrial Dispositions**

On May 4 and June 1, 2015, the parties came before the trial justice on the Foundation's motion for partial summary judgment on Count I of the Foundation's fifth amended complaint, seeking to enjoin the Ballards from accessing the jointly owned Edgehill property sewer system to service a subdivision of Lot 20. The trial justice noted at the later hearing date that

> "[t]his Court gave the parties a month to try to resolve the matter by trying to reach a resolution that would pay for the sewerage system. * * * There seems to be no material fact that I can see. As a matter of law, [the sewer easement] apparently cannot be extended to benefit other lots that were not a part of the initial partition."

In recognizing that another easement would have to be created in order for the Ballards to connect to the sewer system, the trial justice granted the motion for summary judgment in favor of the Foundation, awarding injunctive and declaratory relief to prevent the expansion of the sewer system. An appeal of that order is before us in this matter.

On July 9, 2015, the trial justice conducted an on-the-record pretrial conference in an attempt to narrow the issues in the consolidated cases and clarify which claims would proceed to trial on July 29, 2015. The trial justice patiently plowed through the multiple claims in each complaint and counterclaim.[9]

In open court and on the record, the parties agreed to dismiss a number of the claims in advance of trial. Included in the claims addressed at the conference was the Ballards' demand

---

[9] During the July 9, 2015, hearing, the parties continued to bicker over whether some claims had been dismissed by stipulation; the trial justice expressed his frustration:

> "I'll let you know, as I'm sitting here and thinking about a potential jury in this case, and people in this town are wealthy, and then there's those less fortunate, probably sometimes can't buy groceries, and the amount of silly money spent in this case for [fourteen] years, this is going to be embarrassing for someone in the long run, I can tell you that."

for an accounting as set forth in its counterclaim to the Foundation's fifth amended complaint. Counsel for the Ballards agreed to dismiss this claim. Soon thereafter, counsel for the Ballards notified the Foundation that he intended to pursue an accounting claim at trial. The record before us reflects that the Ballards attempted to recast their accounting claim as a demand for expenses related to *post*-partition work on the sewer system, which was unrelated to the original accounting claim. Accompanying this eleventh-hour about-face was an e-mail, characterized as a "document dump"—consisting of voluminous written material—in support of the Ballards' claim for reimbursement for *post*-partition sewer expenses. The Foundation filed an emergency motion to enforce the Ballards' previous dismissal of their accounting claim, and, on July 27, 2015, two days before trial, the trial justice held a hearing.[10] The Foundation argued that, based on counsel's colloquy with the court on July 9, 2015 the Ballards' accounting claim had been dismissed.

In light of the shifting posture of his adversary, counsel for the Foundation prudently arrived at the courthouse early on the morning of July 27, 2015, and secured a transcript of the pretrial conference concerning the accounting counterclaim. The trial justice reviewed the transcript and confirmed the dismissal of the newly formulated accounting claim, based on counsel's representation to the court on the July 9, 2015 hearing. An order entered that granted the Foundation's emergency motion to enforce a settlement agreement, and dismissed the Ballards' accounting counterclaim.[11] The Ballards have appealed the dismissal.

---

[10] Due to the timing of the Ballards' "document dump," the Foundation was left with no alternative course of action other than to file an emergency motion.

[11] In the same order, the trial justice also granted the Foundation's motion to dismiss without prejudice its unjust enrichment claim (Count IV of the fifth amended complaint) pending an appeal, and dismissed without prejudice the Ballards' trespass claim (Count I of their counterclaim) pending appeal.

There was no trial on any claim. After the July 27, 2015 hearing, counsel for the Ballards filed a motion for sanctions pursuant to Rule 11 of the Superior Court Rules of Civil Procedure, alleging that counsel for the Foundation had falsely represented that a settlement agreement had been reached on July 9, 2015. He also accused counsel and the trial justice of engaging in *ex parte* communications, a serious accusation that was based on the fact that the trial justice was provided with the transcript in advance of the emergency hearing.

On August 31, 2015, the parties came before the trial justice yet again, on the Foundation's motion for summary judgment on the driveway easement. During this hearing, in obvious frustration over the moving pieces in this case, the trial justice likened this action to that of a shell game:

> "THE COURT: * * * I mean if I watched this case, that has been going on for 15 years, it is beginning to look like a pea. There's one pea under the shell and everybody is kind of moving it around. I wonder if there's a pea at all?"

The Court admonished counsel for the Ballards:

> "THE COURT: This is what I was saying about the pea under the shell."

The trial justice ultimately granted the Foundation's motion for summary judgment on the driveway easement claim, and summarily denied the Ballards' motion for sanctions. A final judgment was entered on October 19, 2015. The Ballards filed a timely notice of appeal.

**Standard of Review**

It is well settled that "[t]his Court reviews a grant of summary judgment *de novo*." *Sullo v. Greenberg*, 68 A.3d 404, 406 (R.I. 2013) (quoting *Sacco v. Cranston School Department*, 53 A.3d 147, 149-50 (R.I. 2012)). "Examining the case from the vantage point of the trial justice who passed on the motion for summary judgment, '[w]e view the evidence in the light most

favorable to the nonmoving party, and if we conclude that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law[,] we will affirm the judgment.'" *Id.* at 406-07 (quoting *Sacco*, 53 A.3d at 150). "Although summary judgment is recognized as an extreme remedy, * * * to avoid summary judgment the burden is on the nonmoving party to produce competent evidence that 'prove[s] the existence of a disputed issue of material fact[.]'" *Id.* at 407 (quoting *Mutual Development Corp. v. Ward Fisher & Co.*, 47 A.3d 319, 323 (R.I. 2012)). In the absence of a credible showing of the existence of material facts, summary judgment is warranted.

## Analysis

The Ballards have narrowed their appeal to the judgments concerning the sewer system and the driveway easement; the order dismissing the accounting claim, based on the in-court conference; and the denial of their Rule 11 motion for sanctions against the attorney for the Foundation. We address these issues in turn.

## A

### The Sewer System
### (NC-2000-0340)

It is apparent from the multiple complaints and counterclaims, and the voluminous record, that the Ballards' efforts to connect Lot 20 to the sewer system have never abated. In 2000, before the partition proceedings began, the Ballards requested an easement to connect their abutting Lot 20 to the sewer system. The Trust, the owner at the time, objected and filed an action seeking to enjoin the Ballards from expanding the sewer system in order to service abutting properties. The Superior Court subsequently entered the partition judgment and adopted the findings and recommendations of the commissioner. Notably, the commissioner addressed the sewer issue, finding that the main sewer line crosses from the pump house, through the rear

of the Foundation's Swiss Village property, and traverses Lot 20 for a short distance. The commissioner expressly reported in 2002 that:

> "The question of whether the Ballards or [the Foundation] may use the system in order to service their adjacent properties (lots #20 and #66, respectively) need not be addressed in this recommendation. Any such future use (or misuse) is presently speculative. The resolution of any such contingency would require a fact-intensive analysis of the issues presented at the time, should the need arise.
>
> "Any and all lateral sewer lines, *i.e.*, those that are connected to the main feed line (which runs from the pump house crossing the Swiss Village to lot #20) and the forced main line (which traverses the Carriage House and Manor House lots from the pump house) should be owned and maintained solely by the owners of the respective lots [, under] which such lateral lines serve."

On June 1, 2015, the trial justice granted summary judgment in favor of the Foundation and enjoined the Ballards from connecting Lot 20 to the sewer system. The trial justice declared:

> "As a matter of law, this easement apparently cannot be extended to benefit other lots that were not a part of the initial partition. So the rights to full usage across this piece of property would be in the nature of an easement, so therefore I'm going to grant the Motion for Summary Judgment for [the] Foundation."

The Ballards contend before this Court that the trial justice erred in rejecting their claim of a sewer easement. The Ballards argue that an easement by necessity or implication to use the sewer system to service Lot 20 arose from the partition judgment. Notwithstanding the commissioner's specific findings rejecting any such easement, the Ballards rely upon a different portion of the partition judgment that declares "[t]o the extent that other necessary but *unspecified utility or drainage lines, conditions, or facilities* exist which predate the partition, such shall be deemed pre-existing easements by necessity or implication which inure to the benefit of the dominant tenant." (Emphasis added.) This argument is wholly without merit. This portion of the partition judgment is separate and apart from the specific declaration in the

- 11 -

judgment relating to the sewer system. The sewer system is not an "unspecified utility or drainage line." The Ballards also contend that "below-ground flow of sewage" and a manhole located on Lot 20 somehow amount to a preexisting easement. The Ballards have failed to articulate how a manhole and underground sewer pipe can service an uninhabited parcel of land. The Ballards also claim—without any supporting evidence—that an easement was created by and through their deed to Lot 20.

The Foundation responds that Lot 20 has never been serviced by the sewer system and that, therefore, the partition of the Edgehill property did not create an easement for Lot 20. Although acknowledging that sewer pipes extend underneath Lot 20 for a short distance, the Foundation argues that this circumstance does not create an easement for Lot 20 to access the sewer system.[12] Nor does the placement of a manhole on Lot 20 give the Ballards any right to connect to the sewer system, contends the Foundation. Finally, the Foundation argues that the Ballards' deed to Lot 20 neither grants an easement for access to the sewer system, nor does it purport to create any issue of material fact. We agree with these contentions and proceed to resolve the issue of Lot 20 and the sewer system with finality.

There is nothing in the unappealed partition judgment that gives rise to an easement, express or implied, for Lot 20 to access the sewer system. Lot 20 and the sewer issue specifically were excluded in the partition judgment. The Ballards' contention that the location of a manhole on Lot 20 somehow gives them the right to tie into the sewer system, while artful, is delusory. The manhole that is situated on Lot 20 has no bearing on the issues in this case. To the extent that it constitutes a trespass, the Foundation has agreed to remove it. Similarly, the

---

[12] The Foundation has consistently offered to relocate the pipes that intrude onto Lot 20, to no avail. Counsel for the Ballards responded that the Foundation has no right to come onto their land.

fact that a lateral sewer line extends for a short distance onto Lot 20 is equally irrelevant; Lot 20 is an undeveloped parcel of land.

Finally, we briefly address the Ballards' argument that they were granted an easement to connect to the sewer system through the original property deed to Lot 20. The Ballards raised this issue a month before trial in a motion to amend their counterclaim. Their attempt to add this claim to a case that had been pending for over a decade was rebuffed. They are foreclosed from raising that issue on appeal. As we consistently have held on numerous occasions, "[t]his Court staunchly adheres to the 'raise or waive' rule." *State v. Barros*, 148 A.3d 168, 174 (R.I. 2016) (quoting *State v. Figuereo*, 31 A.3d 1283, 1289 (R.I. 2011)). "The raise-or-waive rule requires that objections are to be raised at trial so that opposing counsel has 'an opportunity to respond appropriately to claims raised.'" *Id.* at 175 (quoting *State v. Burke*, 522 A.2d 725, 731 (R.I. 1987)). Because the Ballards failed to raise and articulate any claim that the property deed to Lot 20 granted them, as they contend on appeal, "the right to lay sewer and other underground lines" into the Edgehill property, we deem this argument waived. Accordingly, the Ballards have no right to connect Lot 20 to the sewer system; they have no express or implied easement in the sewer system, as a matter of law.

**B**

**The Driveway Easement**
**(NC-2013-0499)**

In 2013, after they dismantled and relocated the existing driveway, the Ballards filed an action seeking to prevent the Foundation from erecting a fence on the Foundation's property. As noted above, it was the Ballards who sought to repair and relocate the driveway, along with the stone pillars and the iron gate. The Foundation, through written correspondence, had agreed to the Ballards' request to relocate the driveway, with the understanding that the Foundation would

erect a fence on the Foundation's side.[13]  However, when the Foundation undertook to install the

fence, the Ballards balked.  They filed suit seeking to enjoin the construction of the fence,

alleging that there was no agreement between the parties and that they intended to continue to

use the driveway easement for "landscaping and plantings."  It was a short fight; the Ballards

lost.  Injunctive relief was denied, and summary judgment was eventually sought.  On August

31, 2015, the trial justice granted summary judgment, declaring that the Foundation was no

longer burdened by the driveway easement.

Before this Court, the Ballards contend that the issues surrounding whether there was a

contract between the parties or whether the Ballards abandoned the driveway easement are fact-

bound inquiries for which summary judgment should not have been granted.  This argument is

without merit.  The existence of a contract, of course, is a matter of law.  *See Fogarty v.*

*Palumbo*, 163 A.3d 526, 539 (R.I. 2017) (affirming trial justice's grant of summary judgment

because the evidence presented, as a matter of law, did not establish the existence of a contract);

*Filippi v. Filippi*, 818 A.2d 608, 625 (R.I. 2003) (affirming the trial justice's decision as a matter

---

[13] The letter dated September 17, 2013, states:

> "Dear Mr. Ballard:
>
> "* * *
>
> "We agree to your *moving the gate and driveway*, including the pillar that presently sits on [the Foundation] property, to a new location.  It's our understanding that the *new access way* to the Carriage House, including the driveway and gates, will be located entirely on Ballard property and that *you will remove the driveway surface from the Foundation property*. The Foundation, in turn, will fence our side of the property line, and install planting so as to return its property, in that area, to a natural condition.
>
> "We look forward to seeing the changes and know it will be a great improvement."  (Emphasis added.)

of law on the existence of a contract). However, we need not delve deeply into the law of contracts, because the issue before the Court is controlled by the law of easements.

The record discloses that, due to zoning setback requirements, the Carriage House driveway was on the Foundation's portion of the property, and an easement was necessary in order for the Ballards to access the Carriage House. Although this easement was an express grant of easement in the partition judgment, it was nonetheless a necessary component of the partition and was granted for a specific purpose. Thus, it possessed all of the characteristics of an easement by necessity.

When the Ballards relocated the driveway to their property, the driveway easement was no longer necessary. The law is clear that when an easement of necessity is no longer necessary, the right to that easement is terminated and the easement thereafter ceases to exist. *See Fusaro v. Varrecchione*, 51 R.I. 35, 36, 150 A. 462, 462 (1930) ("A right of way of necessity ceases when the necessity for its continuance ceases[.]" (quoting *Sweezy v. Vallette*, 37 R.I. 51, 54, 90 A. 1078, 1080 (1914))). Generally, this occurs when another lawful way onto the property has been acquired, thus eliminating the necessity. *Sweezy,* 37 R.I. at 54, 90 A. at 1080.

Furthermore, we are of the opinion that the driveway easement was abandoned by the Ballards themselves based on the undisputed evidence produced on summary judgment. It has been held that "[w]hether or not a way has been abandoned by acts *in pais* is a question of intention and such intention must be shown by positive evidence of an express declaration to that effect or *by acts of a decisive character*." *Sweezy,* 37 R.I. at 54, 90 A. at 1080 (emphasis added). In the case before us, we are hard pressed to envision a more decisive act of abandonment than relocating the very driveway over which the easement runs, taking a stone pillar and the gate along with you, and then excavating the driveway surface from the servient estate. The Ballards

not only abandoned the easement, they demolished it. When the owner of an easement "has voluntarily acted in so decisive a manner as to clearly indicate his intent to abandon the easement," and these acts "were relied upon by the person owning the land subject to the easement[,]" the easement has been abandoned as a matter of law. *Charles C. Gardiner Lumber Co. v. Graves*, 63 R.I. 345, 350, 8 A.2d 862, 864 (1939). The evidence produced on summary judgment is uncontradicted and conclusive. The easement has been abandoned by the acts of the Ballards.

Accordingly, there were no genuine issues of material fact presented in this case, and the trial justice properly granted summary judgment. We affirm.

## C

### Accounting Counterclaim and Sanctions

We now turn to the more troubling issues in this case: the Ballards' shifting position on the dismissal of their accounting counterclaim and the eleventh-hour transmutation of the claim itself. In 2005, in their answer and counterclaim to the Foundation's fifth amended complaint, the Ballards sought an accounting pursuant to G.L. 1956 § 10-2-1.[14] The Ballards alleged that,

---

[14] General Laws 1956 § 10-2-1 provides:

> "Whenever two (2) or more persons have and hold any estate, interest or property, whether real or personal, in common as joint tenants, tenants in common, co-parceners or joint owners and one or more of the owners of the common property shall take, receive, use or have benefit thereof, in greater proportion than his, her, or their interest therein, such owner or owners, his, her, or their executors and administrators shall be liable to render his, her, or their account of the use and profit of such common property to his, her or their fellow commoner or commoners, jointly or severally; and such of the fellow commoner or commoners or any or either of them, their executors or administrators, shall have his, her, or their action against such receiver or receivers or either of them, as his,

- 16 -

before the partition judgment, the Trust had committed waste on the jointly owned property, including demolition and reconstruction of structures in violation of local regulations and ordinances, and altering and destroying extensive wetlands, in contradiction of the Ballards' interests. The Ballards alleged that they were cited by the state's Department of Environmental Management for wetlands violations and ordered, "along with Hamilton, to perform extensive restoration work and pay administrative penalties[,]" requiring them to "expend great sums on attorneys' fees and expert fees[.]" They sought an accounting.

In 2006, in response to an interrogatory inquiring about the facts and documents in support of the accounting claim, the Ballards answered:

> "The plaintiff and defendants were joint tenants in the Edgehill property. *During the time of the joint tenancy*, the plaintiff embarked on significant alterations to the jointly held property without the knowledge or approval of the defendants." (Emphasis added.)

Additionally, when asked in another 2006 interrogatory to set forth the specific amount of damages they were seeking for each claim in their counterclaim, the Ballards responded:

> "The defendants' claim for money damages is for the legal and professional fees they were required to incur in protecting their interests after being named as defendants in the Department of Environmental Management's enforcement action that arose out of Mrs. Hamilton's uncontested alterations and destruction of wetlands on the jointly owned property."

The Ballards are bound by these responses, and their attempt to transmute the claim into one seeking post-partition sewer expenses must fail.

---

> her, or their bailiff or bailiffs, for receiving more than his, her, or their part or proportion as provided in this section."

Furthermore, the accounting claim lay dormant for many years until the July 9, 2015 pretrial conference. It was at that time that counsel for the Ballards made the following statements with respect to several claims, including the accounting claim:

> "[COUNSEL FOR THE BALLARDS]: * * * Count 2, malicious prosecution: We do not intend to pursue that claim and I offered to dismiss that with prejudice; abusive [*sic*] process, the same; waste, the same.
>
> "* * *
>
> "*Accounting, I've offered to dismiss that with prejudice.*
>
> "And interference with access easement is in the Supreme Court and is pending appeal."

As the trial date approached, there was no writing reflecting this agreement. However, counsel for the Ballards notified the Foundation of his intention to pursue the newly clothed accounting claim, and filed a pretrial memorandum that set forth the basis of an entirely new claim. In the memorandum counsel stated:

> "The Ballards seek an accounting to impose liability on [the Foundation] for its share of expenditures that the Ballards have made for *maintenance of and repairs and improvements to the Edgehill sewer system* which Ballards and [the Foundation] own as tenants in common." (Emphasis added.)

Counsel forwarded more than 90 pages of correspondence, invoices, and photographs to the Foundation in an effort to recast the accounting claim under a new set of facts. As noted, counsel for the Foundation immediately filed an emergency motion to enforce the Ballards' agreement to dismiss the claim and wisely procured a transcript on the morning of the hearing. After reviewing the transcript, the trial justice granted the Foundation's motion to enforce the agreement to dismiss the claim:

> "[COUNSEL FOR THE FOUNDATION]: Your honor, this is a count going back a year that [the Ballards' counsel] has told me

- 18 -

was dismissed. It relates to a 2000 case. Now we came before this Court on pretrial conference to limit the issues so the parties would know what is going to be tried and so the Court would know what is going to be tried. And your Honor went through each of these for a great deal of time.

"THE COURT: Over an hour.

"[COUNSEL FOR THE FOUNDATION]: At [the Ballards' counsel's] request. And at the point that you came up with, you said: 'What is going on with this accounting claim?' And [the Ballards' counsel] said: 'I offered to dismiss that with prejudice[.'] And you said: 'Let's go to the next one.'

"[COUNSEL FOR THE BALLARDS]: Do you have the transcript?

"THE COURT: I have it here.

"[COUNSEL FOR THE FOUNDATION]: Your Honor, this relates to the 2000 case.

"THE COURT: Wait a minute. The motion is granted. I want to move on. You can note your objection."

Regrettably, the Ballards next sought Rule 11 sanctions, arguing that counsel for the Foundation had fraudulently represented to the trial justice that the Ballards' accounting claim had been dismissed and that he and the trial justice had engaged in an *ex parte* communication. The Ballard's counsel acknowledged at oral argument before us that this latter claim was based on the fact that the trial justice was provided with a transcript of the July 9, 2015 proceeding.

We begin our analysis of this troubling conduct by noting that Rule 1.4 of the Superior Court Rules of Practice provides that "[a]ll agreements of parties or attorneys touching the business of the court shall be in writing, *unless orally made or assented to by them in the presence of the court when disposing of such business*, or they will be considered of no validity." (Emphasis added.) Additionally, this Court has held that "stipulated agreements [must] *be placed on the record or * * * be reduced to an agreed-upon writing* [to ensure] that the

- 19 -

agreement itself does not become a source of further controversy and litigation." *In re McBurney Law Services, Inc.*, 798 A.2d 877, 881 (R.I. 2002) (emphasis added) (quoting *DiLuglio v. Providence Auto Body, Inc.*, 755 A.2d 757, 776 (R.I. 2000)). "A party may not escape its obligations simply because one of the parties may not consider the agreement to be as palatable to them as when they entered into it." *Id.*

The record in this case is clear: counsel for the Ballards stipulated in open court that he was dismissing the accounting claim, along with several other counts in the consolidated actions. We reject as disingenuous counsel's appellate contention that his statement was not "a statement of present intention" to dismiss the Ballards' accounting claim. It is undisputed that the purpose of the pretrial conference on the record was to narrow the claims asserted in the complaints and counterclaims in order to prepare for trial.

Moreover, counsel's argument that there was no dismissal of the accounting claim because there was no writing is wrong. First, as noted, a writing is not required when the stipulation is made in open court. Secondly, and of greater concern, counsel made identical representations, in open court, for three additional counts that were dismissed without a written stipulation. When asked about this disparity at oral argument, counsel insisted that he was "entitled to pick and choose." This response speaks to the fallacy of counsel's contentions before this Court. Accordingly, we conclude that the trial justice properly dismissed the Ballards' accounting counterclaim.

The Ballards further contend that it was inappropriate for the trial justice to deny Rule 11 sanctions against counsel for the Foundation.[15] The Ballards insist that counsel's motion seeking

---

[15] Rule 11 of the Superior Court Rules of Civil Procedure provides, in relevant part:

to enforce a settlement agreement was fraudulent because no settlement agreement had been reached by the parties. The Ballards also accused the trial justice of engaging in *ex parte* communication with counsel for the Foundation because counsel prudently obtained a transcript of the pretrial conference and provided it to the Court at the later hearing. The Ballards contend that it was an abuse of discretion by the trial justice to deny sanctions without setting forth his reasoning on the record. These contentions are without merit. Counsel has failed to proffer a good-faith basis for seeking Rule 11 sanctions.

This Court will not disturb a trial justice's decision to impose or deny sanctions for an attorney's alleged misconduct unless the trial justice based his or her ruling on "an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Michalopoulos v. C&D Restaurant, Inc.*, 847 A.2d 294, 300 (R.I. 2004) (internal quotation marks omitted). Here, the

---

"The signature of an attorney, self-represented litigant, or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry the pleading, motion, or other paper is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that the pleading, motion, or other paper is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, unless signed promptly after the omission is called to the attention of the pleader or movant, or is signed with intent to defeat the purpose of this rule, the pleading, motion, or other paper shall be stricken. *If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed the pleading, motion, or other paper, a represented party, or both, any appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee*." (Emphasis added.)

trial justice appropriately exercised his broad discretion when he denied Rule 11 sanctions. There is no suggestion on the record before us that the trial justice abused his discretion. We uphold the trial justice's decision.

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment in all respects. The record shall be returned to the Superior Court.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Carol C. Ballard et al. v. SVF Foundation. <br> SVF Foundation v. Carol C. Ballard et al. <br> Dorrance H. Hamilton et al. v. Carol C. Ballard et al. |
| **Case Number** | No. 2015-351-Appeal. <br> (NC 13-499) <br><br> No. 2015-352-Appeal. <br> (NC 08-655) <br><br> No. 2015-353-Appeal. <br> (NC 00-340) |
| **Date Opinion Filed** | April 10, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Newport County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Walter R. Stone |
| **Attorney(s) on Appeal** | For Plaintiffs: <br><br> R. Daniel Prentiss, Esq. |
| | For Defendants: <br><br> Stephen J. MacGillivray, Esq. <br> Michael Daly, Esq. |